# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00178-CV

**Vista Healthcare, Inc., Appellant**

**v.**

**Texas Mutual Insurance Company; Texas Department of Insurance, Division of Workers' Compensation; Texas Association of School Boards Risk Management Fund; and The Travelers Insurance Companies, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT NO. D-1-GN-07-002475, HONORABLE DARLENE BYRNE, JUDGE PRESIDING

## O P I N I O N

In an appeal arising from a workers' compensation medical benefits reimbursement dispute, Vista Healthcare, Inc., challenges a final district court judgment rejecting Vista's declaratory-judgment challenge to the validity of a rule of the Division of Workers' Compensation, Texas Department of Insurance (Division)[1] and ordering that Vista take nothing on a suit for judicial review of a final Division order. In five issues, Vista asserts that the district court's judgment and the underlying Division order are predicated on an erroneous construction of the

---

[1] The underlying events, as explained below, date back to 2001 and involve administrative actions both of the Division and its predecessor agency, the Texas Workers' Compensation Commission. Effective September 1, 2005, the legislature abolished the Commission and transferred its statutory responsibilities and rules to the Division. *See* Act of May 29, 2005, 79th Leg., R.S., ch. 265, §§ 8.001(b), .004(a), 2005 Tex. Gen. Laws 607, 608. For clarity and simplicity, we will use "the Division" to refer to both the former and successor entities.

challenged rule and that the rule, if so construed, is unconstitutionally vague. Concluding otherwise, we will overrule Vista's contentions and affirm the district court's judgment.

**BACKGROUND**

At relevant times, Vista operated an ambulatory surgical center (ASC) in Houston. An ASC is "a healthcare facility 'that operates primarily to provide surgical services to patients who do not require overnight hospital care.'" *Texas Workers' Comp. Comm'n v. East Side Surgical Ctr.*, 142 S.W.3d 541, 543 n.1 (Tex. App.—Austin 2004, no pet.) (quoting Tex. Health & Safety Code Ann. § 243.002 (West 2001)). On June 23, 2001, a physician administered epidural steroid injections to a workers' compensation claimant at Vista's facility. Vista billed the responsible workers' compensation carrier, appellee Texas Mutual Insurance Company, $5,643.12 for its services, including charges for use of the facility, supplies, medications, and other support functions.[2] Texas Mutual reimbursed Vista only $397.80.

The labor code and Division rules extensively regulate the amounts of reimbursement that health care providers like Vista are paid for treatment or services provided to injured workers. Among other regulations, section 413.011 of the labor code has required the Division to promulgate "fee guidelines" setting maximum amounts that are paid for medical services provided to workers' compensation claimants. Among other requisites of these fee guidelines, section 413.011(d), at relevant times, mandated that:

---

[2] The physician who actually administered the procedure billed his charges separately, and those charges are not at issue here.

Guidelines for medical services fees must be fair and reasonable and designed to ensure the quality of medical care and to achieve effective medical cost control. The guidelines may not provide for payment of a fee in excess of the fee charged for similar treatment of an injured individual of an equivalent standard of living and paid by that individual or by someone acting on that individual's behalf. The [Division] shall consider the increased security of payment afforded by this subtitle in establishing the fee guidelines.

*See* Act of May 18, 2001, 77th Leg., R.S., ch. 1456, § 6.02, 2003 Tex. Gen. Laws 5167, 5185, *codified as amended*, Tex. Lab. Code Ann. § 413.011(d) (West 2006 & Supp. 2010). However, at the time Vista provided the services at issue, the Division had not yet adopted a medical fee guideline applicable to ASC services. The genesis of the present dispute lies in disagreements between Vista and Texas Mutual regarding the Division rules that governed Vista's reimbursement claim in the absence of an applicable medical fee guideline.

To summarize these disagreements, which we will explore in detail below, Vista and Texas Mutual advanced competing views regarding the extent to which the determination of Vista's reimbursement rate, in the absence of an applicable medical fee guideline, is governed by the same standards set forth by the legislature in labor code section 413.011(d) to guide the Division's promulgation of medical fee guidelines. Texas Mutual has taken the position that the Division's rules governing its reimbursement for Vista's services incorporate the entirety of the factors set forth in labor code section 413.011(d): the reimbursement rate must (1) be "fair and reasonable," (2) be "designed to ensure the quality of medical care," (3) be "designed . . . to achieve effective medical cost control," (4) "not provide for payment of a fee in excess of the fee charged for similar treatment of an injured individual of an equivalent standard of living and paid by that individual or by someone acting on that individual's behalf," and (5) "consider the increased security of payment afforded

3

by [the workers' compensation statute]." Based on these considerations, Texas Mutual devised a reimbursement methodology for ASC services that was based on Medicare payment rates for such services. It then applied that methodology to calculate the $397.80 it paid Vista.

Vista, in contrast, maintained that the applicable Division rules entitled it to reimbursement that was "fair and reasonable," which it equated with its "usual and customary" charges—what it would charge non-workers' compensation payors for the same treatment and services—without consideration of whether those amounts "ensure the quality of medical care" or "achieve effective medical cost control." The $5,643.12 Vista charged Texas Mutual purportedly represented Vista's usual and customary charge for the services at issue.

Complaining of what it viewed as a greater-than-ninety-percent underpayment, Vista requested medical dispute resolution before the Division's Medical Review Division. *See* 28 Tex. Admin. Code § 133.307 (2004). The Division issued an August 2002 order denying additional reimbursement to Vista. Vista then sought a contested-case hearing before the State Office of Administrative Hearings (SOAH), to which authority was delegated to issue the final administrative order. *See* Tex. Lab. Code Ann. § 413.0311(a)-(c), (e) (West Supp. 2009). The hearing convened in May 2007. Before SOAH, Vista took the position that it was entitled to reimbursement from Texas Mutual of 70 percent of its billed charges. It reasoned that this percentage represented "fair and reasonable" compensation because it had historically received 70 percent of its billed charges from carriers. To support this premise, Vista presented evidence regarding its past reimbursement payments from carriers. Texas Mutual, in turn, presented evidence regarding its payment methodology for ASC services in 2001.

4

The Administrative Law Judge (ALJ) ordered that Texas Mutual was not required to pay Vista any additional reimbursement. He concluded that "Vista failed to prove that 70 percent of its usual and customary charges that it billed for the procedure at issue constituted fair and reasonable reimbursement within the meaning of Tex. Labor Code Ann. § 413.011" and that "Vista failed to show by a preponderance of the evidence that it is entitled to additional reimbursement for the services at issue in this proceeding." In support of these conclusions, the ALJ found flaws in Vista's methodology in determining that it had historically been paid 70 percent of its billed charges. Specifically, the ALJ found that "Vista received payment of its billed charges from other payors at varying rates; it did not consistently receive payment of 70 percent of its billed charges" and that "Vista developed its charges to [Texas Mutual] based on charges made to and paid by other insurance providers to it under managed care contracts and other fee arrangements." However, the ALJ, agreeing with Texas Mutual's view that "fair and reasonable" reimbursement was determined based on all of the factors in labor code section 413.011, also found that Vista "did not evaluate its billings rate in light of any national guidelines or norms for either ASC's or workers' compensation claims," and "did not evaluate its billing rate to determine whether those rates insured the quality of medical care for workers' compensation claimants, achieved effective medical cost control, or were comparable to fees charged for similar treatment of an injured individual of an equivalent standard of living."

Vista filed suit for judicial review of SOAH's order in Travis County District Court. *See* Tex. Labor Code Ann. § 413.0311(d); Tex. Gov't Code Ann. §§ 2001.171-.178 (West 2008). It also asserted claims under section 2001.038 of the Administrative Procedures Act, *see* Tex. Gov't

5

Code Ann. § 2001.038 (West 2008), seeking declarations regarding the validity and applicability of title 28, rule 134.1 of the Texas Administrative Code, which Vista terms the Division's general "default rule" governing reimbursement rates in the absence of an applicable medical fee guideline. As of June 2001, when Vista provided the services at issue, rule 134.1 had provided that "[r]eimbursement for services not identified in an established fee guideline shall be reimbursed at fair and reasonable rates as described in the Texas Workers' Compensation Act, § 8.21(b), until such period that specific fee guidelines are established by the [Division]." *See* 16 Tex. Reg. 5210 (1991), *amended* 27 Tex. Reg. 4047 (2002), *repealed* 31 Tex. Reg. 3561 (2006).[3] There is no dispute that "Texas Workers' Compensation Act, § 8.21(b)" referred to the former article 8308-8.21(b) of the Texas Revised Civil Statutes, which had been repealed and replaced by labor code section 413.011(d) when the Act was recodified and moved to the labor code in 1993. *See* Workers' Compensation Act, 73d Leg., R.S., ch. 269, § 1, 1993 Tex. Gen. Laws 987. Vista sought declarations that rule 134.1 "require[s] only that a provider prove that its fees and charges are 'fair and reasonable' to determine the amount of its reimbursement" and "do not require a provider to prove that in addition to being fair and reasonable, its fees and charges also ensure the quality of medical care, achieve effective medical cost control," or the other factors stated in labor code 413.011(d). If the district court concluded that the rule did incorporate those requirements or limitations, Vista sought a declaration that those provisions rendered Rule 134.1 unconstitutionally void for vagueness.

---

[3] The parties have requested us to take judicial notice of various *Texas Register* entries concerning Division rules and medical fee guidelines. To the extent these matters are relevant to our analysis, we have taken judicial notice of them.

Two sets of parties that have been litigating similar issues with Vista—appellee Texas Association of School Boards Risk Management Fund and a group of affiliated insurers (the "Travelers Intervenors"[4])—intervened as defendants. Vista and the defendants filed two rounds of cross-motions for summary judgment on Vista's declaratory claims. The district court ultimately rendered final judgment granting the defendants' motions and denying Vista's; declaring that "28 Tex. Admin. Code § 134.1(c) (2002) (27 Tex. Reg. 4047) and, specifically, the command that 'fair and reasonable rates' are 'as described in the Texas Workers' Compensation Act, § 413.011,' are not unconstitutionally vague and, thus, are VALID"; and ordering that Vista take nothing on either its declaratory claims or its judicial-review claim. This appeal ensued.

**ANALYSIS**

Claiming error in the district court's judgment, Vista brings five issues on appeal. In its third issue, Vista contends that the Division's interpretation of rule 134.1 as providing that "fair and reasonable" reimbursement must "ensure the quality of medical care" and "achieve effective medical cost control" contradicts the plain language of the rule and underlying statute. In its first and second issues, Vista argues that if rule 134.1 incorporates these requirements or limitations, the rule is unconstitutionally vague and incapable of achieving anything other than "arbitrary" outcomes when used as a standard for determining medical fee disputes. In its fourth and fifth issues, Vista urges that this asserted invalidity or misapplication of rule 134.1 caused the

---

[4] Appellees Fidelity and Guarantee Insurance Company, St. Paul Fire and Marine Insurance Company, Travelers Casualty and Surety Company, Travelers Indemnity Company of Connecticut, and Travelers Casualty and Surety Company of Illinois n/k/a Travelers Casualty Insurance Company of America.

final SOAH order to be arbitrary and based on an error of law, requiring reversal. *See* Tex. Gov't Code Ann. § 2001.174(2)(D), (F). Texas Mutual and the Division have each filed briefs in response, and both of the intervenor appellees have joined in Texas Mutual's brief.

**Rule construction**

Vista's rule-construction argument emphasizes the text and history of Division rule 134.1 (the "default rule") and labor code section 413.011(d). As previously noted, as of June 2001, when Vista provided the ASC services at issue, rule 134.1 provided that "[r]eimbursement for services not identified in an established fee guideline shall be reimbursed at fair and reasonable rates as described in the Texas Workers' Compensation Act, § 8.21(b), until such period that specific fee guidelines are established by the [Division]." *See* 16 Tex. Reg. 5210 (1991), *amended* 27 Tex. Reg. 4047 (2002), *repealed* 31 Tex. Reg. 3561 (2006). Article 8308-8.21(b) of the former revised civil statutes—part of the original 1989 Workers' Compensation Act—had not contained any reference to "ensur[ing] the quality of medical care" and "achiev[ing] effective medical cost control":

> All guidelines for medical service fees under the Act must be fair and reasonable and may not provide for payment of a fee in excess of the fee charged for similar treatment of an injured individual of an equivalent standard of living when the fees for the treatment are paid by the injured worker or by someone acting on the injured individual's behalf. In establishing the fee guidelines, the commission shall consider the increased security of payment afforded by this Act.

Act of Dec. 1, 1989, 71st Leg., 2d C.S., ch. 1, § 8.21, 1989 Tex. Gen. Laws 1, 70, *codified at*, Tex. Rev. Civ. Stat. Ann. art. 8308-8.21(b), *repealed* Act of May 12, 1993, 73d Leg., R.S., ch. 269,

8

§ 1, 1993 Tex. Gen. Laws 987, 1223. However, a preceding provision within the same article of the Act required the Division to "establish by rule medical policies and fee guidelines governing the provision and payment of medical services that are designed to assure the quality of medical care and achieve effective medical cost control." *See id.* § 8.01, 1989 Tex. Gen. Laws at 68. When the Act was recodified in 1993 and moved to the labor code, both sets of requirements pertaining to fee guidelines were incorporated into the new section 413.011(d):

> Guidelines for medical service fees must be fair and reasonable and designed to ensure the quality of medical care and achieve effective cost control. The guidelines may not provide for payment of a fee in excess of the fee charged for similar treatment of an injured individual of an equivalent standard of living and paid by that individual or by someone acting on that individual's behalf. The commission shall consider the increased security of payment afforded by this subtitle in establishing fee guidelines.

Act of May 12, 1993, 73d Leg., R.S., ch. 269, § 1, 1993 Tex. Gen. Laws 987, 1223, *codified as amended*, Tex. Lab. Code Ann. § 413.011(d). The Division did not update rule 134.1's cross-reference to "fair and reasonable rates as described in the Texas Workers' Compensation Act, § 8.21(b)" until 2002, when it changed the language to "fair and reasonable rates as described in Texas Workers' Compensation Act, *§ 413.011*" in 2002. 27 Tex. Reg. 4047 (2002) (emphasis added).

Vista views the default rule's reference to "fair and reasonable rates as described in the Texas Workers' Compensation Act, § 8.21(b)" as incorporating a requirement from section 413.011(d) that rates be "fair and reasonable" without a limitation that rates be "designed to ensure the quality of medical care and achieve effective cost control." Vista attributes significance

9

to the fact that only the "fair and reasonable" language of labor code section 413.011(d), and not "designed to ensure the quality of medical care and achieve effective cost control," originated in section 8.21(b) of the 1989 Workers' Compensation Act. Vista also emphasizes the wording of labor code section 413.001(d)'s first sentence—"fair and reasonable *and* designed to ensure the quality of medical care and achieve effective cost control." In Vista's view, the Division's use of the conjunction "and" between "fair and reasonable" and "designed to ensure the quality of medical care and achieve effective cost control" implies that "designed to ensure the quality of medical care and achieve effective cost control" are qualities of rates distinct from or in addition to "fair and reasonable."

In response, appellees dismiss the significance of rule 134.1's obsolete reference to "fair and reasonable rates as described in the Texas Workers' Compensation Act, *§ 8.21(b)*" and emphasize that rule 134.1 required reimbursement at "fair and reasonable rates *as described in* the Texas Worker's Compensation Act, [§ 413.011]." "Fair and reasonable rates as described in" the provision, appellees reason, denotes the adoption of a concept of "fair and reasonable rates" that incorporates all of the considerations within section 413.011(d), including "ensure the quality of medical care and achieve effective cost control." And this Court, as Texas Mutual points out, reached a similar conclusion in *All Saints Health System v. Texas Workers' Compensation Commission*, 125 S.W.3d 96 (Tex. App.—Austin 2003, pet. denied). In addressing the relevance of managed-care contracts in determining reimbursement amounts in the absence of a fee guideline, this Court reasoned in part:

10

Rule 134.1 provides, in effect, that all cost determinations regarding medical fee reimbursements, whether integrated into the fee guideline adoption process or determined on a case-by-case basis, will be decided according to section 413.011's definition of "fair and reasonable" compensation.

. . . .

The reimbursement fee guidelines, and by extension any reimbursement decision made in the absence of a validly enacted fee guideline, must take all of the statutory factors into account. Thus, to be "fair and reasonable" within the meaning of section 413.011(d), the [Division's] reimbursement decisions must take into account *all* of the statutory factors, guaranteeing both cost control and quality of care. . . .

*Id.* at 102, 104-05.

In addition, appellees point out other Division rules that they consider relevant to whether "fair and reasonable" rates or reimbursement from carriers must "ensure the quality of medical care and achieve effective cost control." Three of these rules were adopted by the Division effective July 2000, before the date Vista provided the ASC services at issue:

- Effective in July 2000, the Division adopted a new rule 133.1—"Definitions for Chapter 133, Benefits—Medical Benefits"—that defined "*fair and reasonable reimbursement*" as "[r]eimbursement that *meets the standards set out in § 413.011 of the Labor Code*" and was the lesser of a health care provider's usual and customary charge or (1) the maximum allowable reimbursement, if one has been established by Division fee guideline; (2) "the determination of a payment amount for medical treatment(s) and/or service(s) for which the [Division] has established no maximum allowable reimbursement amount;" or (3) a negotiated contract amount. 25 Tex. Reg. 2126 (2000) (emphasis added).

- Also effective in July 2000, the Division adopted a rule 133.304(a) that required workers' compensation insurers to take "final action" on a bill submitted by a health care provider within 45 days of receipt, including "sending payment that makes the total reimbursement for that bill a *fair and reasonable reimbursement in accordance with § 133.1(8) (relating*

11

to Definitions for Chapter 133, Benefits—Medical Benefits)."[5] 25 Tex. Reg. 2130 (2000) (emphasis added).

• In another rule effective in July 2000, the Division required that when a carrier paid a health care provider for treatment or services for which the Division had not established a maximum allowable reimbursement, the carrier was required to "develop and consistently apply a methodology to determine *fair and reasonable reimbursement* amounts to ensure that similar procedures provided in similar circumstances receive similar reimbursement." 25 Tex. Reg. 2131 (2000) (emphasis added).

As appellees emphasize, the "fair and reasonable reimbursement" that carriers are required to pay under these rules must "meet[] the standards set out in § 413.011 of the Labor Code." And "standard*s* set out in § 413.011 of the Labor Code," appellees add, is plural and includes "ensure the quality of medical care and achieve effective cost control."[6]

We defer to an agency's interpretation of its own rules unless that interpretation is plainly erroneous or inconsistent with the text of the rule or underlying statute. *See Public Util. Comm'n v. Gulf States Util. Co.*, 809 S.W.2d 201, 207 (Tex. 1991); *Tennessee Gas Pipeline Co. v. Rylander*, 80 S.W.3d 200, 203 (Tex. App.—Austin 2002, pet. denied). We construe administrative rules in the same manner as statutes since they have the force and effect of statutes. *Rodriguez v. Service Lloyds Ins. Co.*, 997 S.W.2d 248, 254 (Tex. 1999). The text of rules, like statutes, is the

---

[5] "§ 133.1(8)" was obviously intended to refer to rule 133.1*(a)*(8).

[6] Texas Mutual also urges that Vista's claim to additional reimbursement was governed by the version of rule 134.1 in effect at the time of its SOAH contested-case hearing in 2007. As of that time, rule 134.1(c)(3) required that in the absence of a fee guideline, the fee had to comply with rule 134.1(d). 31 Tex. Reg. 3561, 3563-64 (2006). Rule 131.1(d), in turn, provided that "fair and reasonable reimbursement is consistent with the criteria of Labor Code § 413.011." *Id.* As Texas Mutual suggests, "the criteria of Labor Code § 413.011" would include "ensure the quality of medical care and achieve effective cost control." Because we determine that the Division's interpretation of the 2001 version of rule 134.1 would not be plainly erroneous or inconsistent with the text of the rule or the underlying statute, we need not address this contention.

first and foremost means of achieving our primary objective: ascertaining and giving effect to the intent of the body that enacted them. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006); *Texas Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004); *Rodriguez*, 997 S.W.2d at 254. However, we must read the enactment as a whole and not just isolated portions, giving meaning to language consistent with its other provisions. *City of Sunset Valley*, 146 S.W.3d at 642. We must presume that the entire enactment was intended to be effective. *Lexington Ins. Co. v. Strayhorn*, 209 S.W.3d 83, 86 (Tex. 2006).

Assuming without deciding that the 2001 version of rule 134.1 governs Vista's reimbursement claim, we cannot conclude that the Division's interpretation of "fair and reasonable rates as described in the Texas Workers' Compensation Act, § 8.21(b)" as including all of the standards set forth in labor code section 413.011 is plainly erroneous or inconsistent with the rule's text or underlying statute. By the time Vista provided the ASC services at issue, section 8.21(b) had been replaced by labor code section 413.011(d) and the Division had enacted the above-described provisions of chapter 133, which explicitly defined "fair and reasonable" reimbursement as "[r]eimbursement that meets the standards set out in § 413.011 of the Labor Code." 25 Tex. Reg. 2126 (2000); 25 Tex. Reg. 2130 (2000); 25 Tex. Reg. 2131 (2000). The "standards set out in § 413.011," in turn, included the requirements that rates be "designed to ensure the quality of medical care and achieve effective cost control." *See* Act of May 12, 1993, 73d Leg., R.S., ch. 269, 1993 Tex. Gen. Laws 987, 1223, *codified as amended*, Tex. Labor Code Ann. § 413.011(d). Rule 134.1 must be read in context with the chapter 133 provisions, as both chapter 133 and 134 were promulgated by the Division as a cohesive enactment that would give force and effect to

the Workers' Compensation Act. *See id.* § 1, 1993 Tex. Gen. Laws 987; *City of Sunset Valley*, 146 S.W.3d at 642. Doing so, we cannot agree with Vista that rule 134.1 required the Division to apply a different concept of "fair and reasonable" than that defined in chapter 133.

Our analysis here is consistent with our decision in *All Saints Health System*, in which we held that Rule 134.1 requires that all cost determinations regarding medical fee reimbursements must take into account *all* of the statutory factors, guaranteeing both cost control and quality of care, section 413.011's definition of "fair and reasonable" compensation. 125 S.W.3d at 102, 104-05. The Division's interpretation here, consistent with our previous analysis, with the Division's governing statute, and with the express requirements of the Division's other existing rules, is not plainly erroneous and we must, therefore, defer to the Division's interpretation. *See Gulf States Util. Co.*, 809 S.W.2d at 207; *Tennessee Gas Pipeline Co.*, 80 S.W.3d at 203. Accordingly, we overrule Vista's third issue.

**Vagueness**

Assuming that rule 134.1 requires that "fair and reasonable" reimbursement requires rates that "ensure the quality of medical care and achieve effective cost control," Vista argues in its first and second issues that the rule is unconstitutionally vague.

Rules are presumed valid and the burden of demonstrating their invalidity is on the challenging party. *Browning-Ferris, Inc. v. Texas Dep't of Health*, 625 S.W.2d 764, 767 (Tex. App.—Austin 1981, writ ref'd n.r.e.). We will find a rule unconstitutionally vague only if it (1) does not give fair notice of what conduct may be punished, and (2) invites arbitrary and discriminatory enforcement by its lack of guidance for those charged with its enforcement.

14

*TXU Generation Co. v. Public Util. Comm'n*, 165 S.W.3d 821, 838-39 (Tex. App.—Austin 2005, no pet.); *Rooms With a View, Inc. v. Private Nat'l Mortgage Ass'n, Inc.*, 7 S.W.3d 840, 845 (Tex. App.—Austin 1999, pet. denied); *see Ford Motor Co. v. Texas Dep't of Transp.*, 264 F.3d 493, 508 (5th Cir. 2001). When persons of common intelligence are compelled to guess at a law's meaning and applicability, due process is violated and the law is invalid. *Browning-Ferris, Inc.*, 625 S.W.2d at 765 (citing *Texas Liquor Control Bd. v. Attic Club, Inc.*, 457 S.W.2d 41, 45 (Tex. 1970)); *City of Webster v. Signad, Inc.*, 682 S.W.2d 644, 646 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). A law is not unconstitutionally vague merely because it does not define words or phrases. *Zaborac v. Texas Dep't of Pub. Safety*, 168 S.W.3d 222, 225 (Tex. App.—Fort Worth 2005, no pet.). And, the existence of a dispute as to a law's meaning does not necessarily render the law unconstitutionally vague. *Canal Ins. Co. v. Hopkins*, 238 S.W.3d 549, 566 (Tex. App.—Tyler 2007, pet. denied).

When applying the fair notice test, courts allow statutes imposing economic regulation greater leeway than they allow penal statutes. *See Pennington v. Singleton*, 606 S.W.2d 682, 689 (Tex. 1980); *State Bar v. Tinning*, 875 S.W.2d 403, 409 (Tex. App.—Corpus Christi 1994, writ denied). Courts recognize the myriad of factual situations that may arise and allow statutes to be worded with flexibility, provided the public has fair notice of what is required or prohibited. *See Pennington*, 606 S.W.2d at 689. In the case of civil or regulatory statutes, no more than a reasonable degree of certainty is required. *See id.*

Applying these principles to rule 134.1, we first note that Vista on appeal challenges the rule only as it relates to fee disputes, conceding that neither it nor the underlying labor code

15

section 413.011(d) is impermissibly vague with respect to formulating fee guidelines. While the concepts of "designed to ensure the quality of medical care and achieve effective cost control" may be adequate and appropriate when used as general guideposts for the Division's formulation of medical fee guidelines, Vista reasons, they fail to provide any meaningful standard in the context of case-by-case adjudication of medical fee reimbursement disputes.

As Rule 134.1 imposes economic as opposed to penal regulation, Vista need only have been allowed a reasonable degree of certainty as to its application to have received fair notice. *See id.*[7] Given that statutes need not necessarily define terms at all to pass the fair notice test, *see Zaborac*, 168 S.W.3d at 225, there is no requirement here that every detail of what constitutes "fair and reasonable" or "designed to ensure the quality of medical care and achieve effective cost control" be set out by rule to provide Vista with fair notice of the standards by which individual fee disputes will be adjudicated. Indeed, because reimbursement determinations are necessarily fact specific and made on a case-by-case basis, no definition could adequately encompass "the myriad of factual situations" that could arise. *See Pennington*, 606 S.W.2d at 689.

---

[7] Vista argues that this more relaxed economic-regulation standard does not apply because a violation of the rule it challenges here carries potentially serious sanctions. *See TXU Generation Co. v. Public Util. Comm'n of Tex.*, 165 S.W.3d 821, 839 n.9 (Tex. App.—Austin 2005, pet. denied). Vista cites the labor code, arguing that, because the code authorizes the Division to assess an administrative penalty of up to $25,000 per day per occurrence for violations of fee and treatment guidelines, the more stringent standard set out in *TXU Generation Co.* should apply. *See id.*; Tex. Lab. Code Ann. §§ 415.003(4), .021(a) (West 2006). However, it is not clear how Vista's actions in submitting claims for reimbursement could, in any case, be construed as a violation of the Division's fee and treatment guidelines. *See* Tex. Lab. Code Ann. § 415.003(4). The medical fee reimbursement rule challenged by Vista does not govern what actions may or may not be permissible with respect to claim submissions; rather, the rule governs how claims will be reimbursed. Accordingly, the more relaxed standards for economic regulation apply. *See Pennington v. Singleton*, 606 S.W.2d 682, 689 (Tex. 1980).

The principle that this type of fee dispute necessarily lends itself to *ad hoc*, case-by-case resolution rather than all-encompassing definitions or guidelines has been repeatedly affirmed by courts in similar contexts. For example, in *Texas Workers' Compensation Commission v. Patient Advocates of Texas*, 136 S.W.3d 643, 656 (Tex. 2004), the Supreme Court considered whether, in the absence of specified fee guidelines, the Commission's rules for determining reimbursement amounts improperly delegated the Commission's fee-setting authority to private entities. In holding that it did not, the Court explained that "an administrative agency's failure to include every specific detail and anticipate unforeseen circumstances when promulgating rules does not invalidate the rules." *Id.* at 655-56 (citing *Railroad Comm'n of Tex. v. Lone Star Gas Co.*, 844 S.W.2d 679, 685 (Tex. 1992)). The Court found that, given the myriad of medical fees the Commission was charged with establishing, its decision to proceed on an *ad hoc* basis, rather than adhering to a stringent and specific set of guidelines, was reasonable. *Id.* at 656-57.

In *Texas Workers' Compensation Commission v. East Side Surgical Center*, 142 S.W.3d 541, 549 (Tex. App.—Austin 2004, no pet.), we held that ASC's are not entitled to fee guidelines. Specifically, we held that East Side was "entitled to 'fair and reasonable' reimbursement—not to have the fee guidelines established by rule." *Id.* As we explained, because fee guidelines were never intended to be an entitlement, "even if the Commission had promulgated fee guidelines, the provider would not have a statutory right or privilege to be paid the amount set out in the guideline." *Id.*[8] Vista's argument here, while set out in constitutional terms, is essentially

---

[8] Vista also cites this Court's decision in *Texas Mutual Insurance Co. v. Vista Community Medical Center*, 275 S.W.3d 538, 554 (Tex. App.—Austin 2008, pet. filed). Our analysis here does not rely on the dicta in that case, as cited by Vista—that the phrases "unusually costly" and

17

the same complaint raised in *East Side*. There, East Side argued that the Commission was acting outside its authority in allowing medical fee reimbursements to be determined on an *ad hoc* adjudicatory basis rather than by rule. *East Side Surgical Ctr.*, 142 S.W.3d at 545. Our decision there that East Side was not entitled to fee guidelines effectively allowed reimbursement decisions to be made on an *ad hoc* basis. *Id.* at 549. Of note here, we explained that "even if the Commission had promulgated fee guidelines, the provider would not have a statutory right or privilege to be paid the amount set out in the guideline." *Id.* According to *East Side*, Vista is, likewise, neither entitled to a fee guideline nor entitled to any set amount of reimbursement. *See id.* Given that no specific reimbursement amount is required, even where the Division has established fee guidelines, and that the Division can reasonably proceed on an *ad hoc* basis in setting fees and reimbursing claims, no more specificity in the language of Rule 134.1 is required to give Vista adequate notice of how fee disputes will be resolved on a case-by-case basis. *See id.*; *Patient Advocates*, 136 S.W.3d at 656-57.

Similarly, when the complaint is viewed in terms of constitutional vagueness, the challenged language here is comparable to language that has been upheld by courts as providing fair notice in the context of case-by-case adjudication. Language that requires fee guidelines to be "designed to ensure the quality of medical care" and "designed to achieve effective cost control" is similar to language that courts have held passes constitutional muster under a vagueness challenge. *See, e.g.*, *Pennington*, 606 S.W.2d at 689-90 (holding that language in DTPA generally prohibiting

---

"unusually extensive," which were not void for vagueness, are "no more vague" than "ensure the quality of medical care" and "achieve effective cost control." *See id.*

18

"false, misleading, or deceptive acts or practices" and providing a non-exhaustive list of such acts provided adequate notice to survive vagueness challenge, explaining: "The boundaries of illegality under the DTPA must remain flexible because it is impossible to list all methods by which a consumer my be misled or deceived."); *TXU Generation Co.*, 165 S.W.3d at 841-43 (reading statute and rule as whole to find broad definition of "prohibited activities" and absence of definition for "market power" as providing constitutionally permissible notice of type of prohibited conduct contemplated); *Tinning*, 875 S.W.2d at 409 (holding term "share legal fees," although not expressly defined, provides adequate notices of type of conduct it would include). The language in these cases, similar to language here requiring that guidelines be "designed to ensure the quality of medical care" and "designed to achieve effective cost control," provide broad parameters for the resolution of disputes on a case-by-case basis. In those cases, as here, where disputes are fact-intensive and fact-specific and, as such, must necessarily be resolved on a case-by-case basis, broad guidelines, like those promulgated by the Division here, have been repeatedly held to be constitutionally permissible. We, likewise, hold that the guidelines at issue here are not unconstitutionally vague and, accordingly, we overrule Vista's first and second issues.

**APA appeal**

Finally, in its fourth and fifth issues, Vista urges that the Division's application or misapplication of rule 134.1 to its reimbursement claim caused the final SOAH order rejecting its claim to be arbitrary and based on an error of law. *See* Tex. Gov't Code Ann. § 2001.174(2)(D), (F). Vista's arguments in support of these issues are predicated on its rule-construction and vagueness contentions. Having overruled those contentions—and leaving aside whether the ALJ's order finds

19

independent support in his findings that Vista failed to establish its central premise that carriers normally paid it 70 percent of its billed charges—we likewise overrule Vista's fourth and fifth issues.

## CONCLUSION

Having overruled Vista's issues on appeal, we affirm the district court's judgment.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Pemberton and Waldrop

Affirmed

Filed:   August 26, 2010