# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00660-CV

**William L. Lindig and Peggy L. Lindig, Appellants**

**v.**

**City of Johnson City, Appellee**

### FROM THE DISTRICT COURT OF BLANCO COUNTY, 424TH JUDICIAL DISTRICT
### NO. CV06530, HONORABLE DANIEL H. MILLS, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

The City of Johnson City sued William L. Lindig and Peggy L. Lindig, seeking an injunction and civil penalties after the Lindigs continued to remodel their residential property in Blanco County after the City issued a "stop work" order based on the Lindigs' failure to obtain a building permit. The Lindigs counterclaimed, asserting that the building-permit-fee ordinance was unconstitutionally vague on its face or as applied to them.[1] On cross-motions for summary judgment, the trial court issued a permanent injunction in the City's favor and awarded the City $42,000 in civil penalties, $95,077 in attorneys' fees, up to $40,000 in conditional attorneys' fees for an appeal, and pre- and post-judgment interest. The trial court also ordered the Lindigs to either

---

[1] The Lindigs' countersuit also included claims against the City's board of adjustment and various City officials, as well as additional claims against the City alleging estoppel, civil conspiracy, and an unconstitutional taking. Those claims, however, were disposed of in the trial court and are not at issue on appeal.

comply with city and state ordinances by obtaining necessary permits or demolish the structure. In four issues on appeal, the Lindigs challenge the constitutionality of the building-permit-fee ordinance on vagueness grounds and, in addition, complain of the related awards of civil penalties, attorneys' fees, and prejudgment interest. We will reverse the trial court's judgment and render in part and remand in part.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

This dispute arose nearly five years ago when the Lindigs refused to pay a $1,000 building-permit fee for "residential remodeling" construction work on a home they purchased for their daughter's use. In December 2007 the Lindigs applied for a building permit for a residential remodeling project. William Lindig averred that, when he obtained the permit application from City Hall, he was told by the City Secretary that he could begin the project without paying a fee. The following month, however, Peter McKinney, the City's Building Official, acted on the Lindigs' permit application based on concerns about compliance with the City's building code and the types of construction materials being used on the project. Upon inspecting the project, McKinney

---

[2] In a previous opinion of this Court, we considered the Lindigs' interlocutory appeal from a trial-court order dismissing the Lindigs' claims for want of subject-matter jurisdiction. We affirmed the trial court's judgment with regard to claims based on alleged injuries to the public at large but otherwise reversed the judgment and remanded the cause for further proceedings. *See Lindig v. City of Johnson City*, No. 03-08-00574-CV, 2009 WL 3400982, at *6 (Tex. App.—Austin Oct. 21, 2009, no pet.) (mem. op.). The extensive procedural history leading up to the summary-judgment proceedings at issue in this appeal were fully set forth in our previous opinion and need not be repeated in their entirety. *See generally id.* at *1-12. In this opinion, we recount the factual and procedural history of the case only to the extent it is pertinent to the issues in this appeal.

informed William Lindig that there would be a $1,000 permit fee for the project.[3] McKinney stated

that the amount of the fee was based on his determination that the remodeling project should be

treated as "new construction" because it involved "substantial work," including some structural

framing, rewiring, and new plumbing, and would require all but two of the inspections normally

required for new construction. Accordingly, McKinney assessed a permit fee of $1,000 for new

construction in accordance with section 06-015 of the City's Code of Ordinances. The Lindigs

refused to pay the fee, whereupon the City issued a stop-work order.

When construction continued despite the stop-work order, the City filed suit in

Blanco County district court seeking injunctive relief against further construction, alleging that the

Lindigs had refused to obey the City's order to cease all work until a building permit was issued.

*See* Tex. Loc. Gov't Code Ann. §§ 54.012(1) (municipality may bring civil action for enforcement

of ordinance relating to materials or methods used to construct buildings), .016 (West 2008)

(injunctive relief available upon showing of substantial danger of injury or adverse health impact

to any person or to property of any person other than defendant). The City also sought civil

penalties for the Lindigs' continued noncompliance with section 06-015 after receiving notice of

noncompliance in the stop-work order. *See id*. § 54.017 (West 2008) (authorizing municipality to

---

[3] The parties do not dispute that the City required the Lindigs to pay $1,000 in fees for the remodeling project, but the evidence is inconsistent regarding whether the *permit fee* itself was $1,000 or something less. Although Peter McKinney testified that the Lindigs were required to pay the $1,000 permit fee applicable to new construction projects, David Dockery, the City Manager and City Administrator, testified before the board of adjustment that the $1,000 fee was actually composed of an $850 permit fee (calculated by taking the $1,000 permit fee for new construction and subtracting $150 for two inspections that would not be required for the remodeling project) and adding a $150 "res check fee." Because this factual discrepancy does not alter our analysis, we characterize the fee as a $1,000 permit fee consistent with the parties' briefing in this case.

3

recover civil penalties if defendant violates ordinance after being notified of ordinance's provisions). In addition to their counterclaims, the Lindigs asserted a number of defenses to enforcement of the ordinance. The trial court denied the Lindigs' motion for partial summary judgment as to the enforceability of the ordinance and granted the City's traditional motions for summary judgment on the Lindigs' claims and the City's statutory claims for injunctive relief, civil penalties, and attorneys' fees. The only claims at issue on appeal, however, are (1) the City's actions for injunctive relief and civil penalties, and (2) the Lindigs' counterclaim under the Texas Uniform Declaratory Judgments Act for a declaration that the City's building-permit-fee ordinance is unconstitutional—both on its face and as applied to the Lindigs' construction project—because it is impermissibly vague and thus imbues the Building Official with unfettered discretion to determine the fees to charge for residential-remodeling construction.

On appeal, the Lindigs assert that (1) the trial court erroneously concluded that the City's building-permit-fee ordinance is enforceable, (2) the trial court erroneously assessed civil penalties and attorneys' fees based on an unenforceable fee ordinance, (3) even if the fee ordinance is enforceable, fact issues precluded summary judgment on the City's claim for civil penalties and attorneys' fees, and (4) the City is not entitled to prejudgment interest either by statute or as equitable relief.

**DISCUSSION**

The principal issue on appeal is whether the building-permit-fee ordinance, section 06-015 of the City's Code of Ordinances, is unconstitutionally vague on its face or as

applied to the Lindigs in this case. In section 06-015, the City adopted the following fee schedule

for building permits:

A. Residential Plan Review and Inspections

Includes plan review and inspections for residential structures as detailed in the Johnson City Residential Code.

Up to and including 5000 square feet total area
    Plan Review and inspections - $1000.000 per house

5000 square feet and greater in total area
    $1000.00 per house plus $0.12 per square foot beyond 5000 square feet

Plan Review re-submittals
    $100.00 per re-submittal

Re-Inspections
    $50.00 each for 2 or more re-inspections

B. Commercial Plan Review and Inspections

1.  Building Permit Fees for New Construction
    a.   $250 + $0.12 cents a square foot
    b.   Fees for tenant finish out and shell buildings will be 75% of the above fees

2.  Plumbing, Mechanical and Electrical fees for New Construction (each)
    a.   $80.00 +$.05 cents a square foot
    b.   Fees for tenant finish out and shell buildings will be 75% of the above fees

3.  Fees for Additions, Alterations, Repairs, Demolition, Screening Walls, Retaining Walls and accessory Buildings.

    The following fees shall be charged for small construction jobs involving additions, alterations and repairs. Larger projects that

5

involve substantial work shall be charged as new construction at the discretion of the Building Official.

| Value of Construction | Permit Fee |
|---|---|
| $0.00 to $2,500.00 | $85.00 |
| $2,500.01 to $5,000.00 | $100.00 |
| $5,000.01 to $10,000.00 | $145.00 |
| $10,000.01 to $25,000.00 | $210.00 |
| $25,000.01 to $50,000.00 | $400.00 |
| $50,000.01 to $100,000.00 | $600.00 |
| $100,000.01 or more | $600.00 for the first $100,000.00 + $75 for each $25,000.00 or fraction thereof.[4] |

By its plain terms, section (A) of the fee ordinance applies to residential construction, and section (B) applies to commercial construction. Section (A) appears to provide a flat fee of $1,000 for construction involving homes under 5,000 square feet. Section (B), on the other hand,

---

[4] Section C of the fee ordinance includes the following "miscellaneous fees," which are not at issue in this appeal:

Any Activity listed below shall be charged the following fee associated with the activity.

| | |
|---|---|
| Certificate of Occupancy | $105.00 |
| (only charged when no permit issued for new construction) | |
| Temporary Certificate of Occupancy | $105.00 |
| (charged for all temporary certificates of occupancy) | |
| Fence Permit | $50.00 |
| In-ground swimming pool | $300.00 |
| Spa or above-ground pool | $105.00 |
| Lawn Sprinkler | $75.00 |
| Construction Trailer | $95.00 |
| Drive Approach | $75.00 per approach |
| Sidewalk | $75.00 per lot |
| Additional Plan Review | $75.00 per hour - 1 hr min. |
| Hourly Rate | $105.00 per hour |

provides a sliding fee scale for new commercial construction and commercial construction involving additions, alterations, repairs, and other non-comprehensive building activities. Subsection (B)(3) includes both a cost-based permit-fee structure and a grant of authority to the Building Official to treat a commercial building project as "new construction" if the Building Official determines, in his "discretion," that the project "involves substantial work." The City has also adopted a series of international building codes, including the "International Residential Code for One- and Two-Family Dwellings" (the "IRC"). Section (A) of the fee ordinance refers to the IRC regarding the scope of its application. The IRC in turn vests the Building Official with "the authority to render interpretations of [the IRC] and to adopt policies and procedures in order to clarify the application of its provisions."

McKinney (the City's Building Official) testified that, pursuant to the authority granted to him under the IRC, he construed section (A) of section 06-015 to apply only to residential *new* construction but used section (B)(3) as a guideline for determining fees for both residential and commercial *remodeling* projects. McKinney further testified that he exercises discretion to deem some residential remodels to be new construction if they "involve substantial work," which results in the application of the fee outlined in section (A) rather than use of the (B)(3) cost-based permit fee he would otherwise use as a guideline for setting the fee for a commercial project. It is disputed whether McKinney derives his authority to do so from subsection (B)(3) or from his general authority under the IRC, but it is undisputed that he engaged in the process set forth in subsection (B)(3) to set the permit fee in this case. The Lindigs contend that section 06-015 is unconstitutionally vague with regard to the fee structure applicable to residential remodeling

7

jobs—either on its face or as it has been applied to them—because (1) the fee ordinance lacks a fee structure clearly applicable to residential remodeling projects, under either section (A) or section (B), and (2) there is neither a definition of "substantial work" nor any guidelines governing the application of that term or circumscribing the Building Official's discretion to deem a remodeling project to be new construction for purposes of establishing the applicable permit fee.

Ordinances are subject to the same constitutional requirements and construction canons as statutes. *Mills v. Brown*, 316 S.W.2d 720, 723 (Tex. 1958) ("The same rules apply to the construction of municipal ordinances as to the construction of statutes."); *cf. Texas Liquor Control Bd. v. Attic Club, Inc.*, 457 S.W.2d 41, 45 (Tex. 1970) ("A rule or order promulgated by an administrative agency acting within its delegated authority should be considered under the same principles as if it were the act of the Legislature."). To determine whether a statute is unconstitutionally vague, we begin by presuming that the statute is constitutional. *Walker v. Gutierrez*, 111 S.W.3d 56, 66 (Tex. 2003). The party challenging the statute's constitutionality has the burden of showing that the statute fails to meet constitutional requirements. *Id.* A statute or ordinance is unconstitutionally vague if the persons regulated by it are exposed to risk or detriment without fair warning or if it invites arbitrary and discriminatory enforcement by its lack of guidance for those charged with its enforcement. *See Comm'n for Lawyer Discipline v. Benton*, 980 S.W.2d 425, 437 (Tex. 1998); *Attic Club*, 457 S.W.2d at 45; *City of Webster v. Signad, Inc.*, 682 S.W.2d 644, 646 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). Implicit in this constitutional safeguard is the idea that laws must have an understandable meaning and must set legal standards that are capable of application. *City of Mesquite v. Aladdin's Castle, Inc.*,

559 S.W.2d 92, 94 (Tex. Civ. App.—Dallas 1977), *writ ref'd n.r.e.*, 570 S.W.2d 377 (Tex. 1978) (per curiam). "It is established that a law fails to meet the standards of due process if it is so vague and standardless as to leave a governing body free to decide, without any legally fixed guidelines, what is prohibited in each particular case." *Id*. Due process is violated and a law is invalid if persons of common intelligence are compelled to guess at a law's meaning and applicability. *Attic Club*, 457 S.W.2d at 45; *Pennington v. Singleton*, 606 S.W.2d 682, 689 (Tex. 1980); *Signad*, 682 S.W.2d at 646.

When applying the fair-notice test, courts allow statutes imposing economic regulation greater leeway than they allow penal statutes. *See Pennington*, 606 S.W.2d at 689; *Signad*, 682 S.W.2d at 646. "A law is not unconstitutionally vague merely because it does not define words or phrases." *Vista Healthcare, Inc. v. Texas Mut. Ins. Co.*, 324 S.W.3d 264, 273 (Tex. App.—Austin 2010, pet. denied). Only a reasonable degree of certainty is required, *id.* (citing *Pennington*, 606 S.W.2d at 689), and the reasonable-certainty requirement "'does not preclude the use of ordinary terms to express ideas which find adequate interpretation in common usage and understanding.'" *Signad*, 682 S.W.2d at 646-47 (quoting *Sproles v. Binford*, 286 U.S. 374, 393 (1932)). Moreover, "the mere fact that the parties disagree as to [an ordinance's] meaning does not mean we must necessarily guess at its meaning." *Mills v. Fletcher*, 229 S.W.3d 765, 770 (Tex. App.—San Antonio 2007, no pet.); *see Vista Healthcare*, 324 S.W.3d at 273.

In the present case, there are no guidelines governing the application of the "substantial work" standard embodied in section 06-015 as construed and applied by the City's Building Official. Nor is there any evidence that this phrase has a peculiar or technical meaning

9

as applied to some trade or science. Rather, the Building Official testified that he alone makes the determination based on his impressions and experience regarding the scope of the work. Significantly, the City does use objective standards in similar circumstances in two other parts of its building regulations. Pursuant to section R105.3.1.1 of the IRC, the determination of whether existing buildings in areas prone to flooding are "substantially improved or substantially damaged" is made according to the following standard:

> If the building official finds that the value of proposed work equals or exceeds 50 percent of the market value of the building or structure before the damage has occurred or the improvement is started, the finding shall be provided to the board of appeals for a determination of substantial improvement or substantial damage.

Once the Building Official has made the determination required by section R105.3.1.1, the board of appeals determines whether the value of the proposed work constitutes "substantial improvement" by applying the following guideline:

> [A]ny repair, reconstruction, rehabilitation, addition, or improvement of a building or structure, the cost of which equals or exceeds 50 percent of the market value of the building or structure before the improvement or repair is started. If the building or structure has sustained substantial damage, all repairs are considered substantial improvement regardless of the actual repair work performed.

*IRC* § R112.2.1. The IRC then lists several exclusions from the term that provide further guidance in its application. *Id.* In comparison to the "substantial work" standard the City's Building Official employed in the Lindigs' case, these provisions provide objective guidelines for applying the term "substantial" to certain residential property requiring construction.

10

As construed and applied to the Lindigs, the ordinance at issue in this case employs language similar to that found to be constitutionally infirm in *City of Webster v. Signad, Inc.* There, the court considered a vagueness challenge to a city sign ordinance that provided that any outdoor advertising signs could not be rebuilt if there was damage to "any substantial parts" of the sign. 682 S.W.2d at 645-46. The court held that the quoted phrase was fatally vague and violated due process because it did not provide operators of outdoor advertising signs with fair and adequate notice as to what sign repairs were permitted or prohibited. *Id.* at 647-48. The ordinance provided no definition or guidelines for measuring "substantial parts" of the sign, leaving the court to conclude that persons of common intelligence would be left to guess the ordinance's meaning. *Id.* at 648. While the court noted that the words "substantial parts" are common, they are not self-explanatory. *Id.* at 647. As the court explained, "Parts of a sign may be simultaneously 'substantial' and 'insubstantial' depending on whether the test used is economic, physical, or functional." *Id.* at 648. The court illustrated the uncertainty and ambiguity that arose from application of the "substantial parts" standard as follows:

> If an economic test is used, how expensive must a repair be to rise to the level of "substantial"? If a sign is valued at $30,000, is $1,000 in damage "substantial"? If a physical test is considered, is damage to one pole of a five-pole sign "substantial"? Should "substantial parts" of the sign include other than structural parts? Section B(15) of the Ordinance defines a "sign structure" as "the support, uprights, bracing, and framework of any outdoor advertising sign"; sign panels, readily movable and changeable, are not defined as a part of the sign structure. Is damage to one or more sign panels therefore to be considered as damage to a "substantial" part of the sign? A sign with broken or inoperative lights is not functional during nighttime hours, although the cost of repairs is small in comparison with the sign's total cost. From a functional perspective, the lights are "substantial parts" of the sign, while from a cost perspective they are not. The same ambiguity arises in numerous similar practical considerations. . . . Operators of outdoor advertising signs receive no fair

11

and adequate notice from section H(2) of the Ordinance as to what sign repairs are permitted or prohibited.

*Id.*

As in *Signad*, people of common intelligence do not have fair notice as to what permit fee is required under section 06-015 for a residential remodel project. Just as important, the seemingly boundless discretion vested in the Building Official to interpret and apply the term invites arbitrary and discriminatory application. *Cf. Coffee City v. Thompson*, 535 S.W.2d 758, 763 (Tex. Civ. App.—Tyler 1976, writ ref'd n.r.e.) ("An ordinance leaving the question of issuing or denying building permits to the arbitrary discretion or determination of the city secretary without any rule or standard to follow is invalid."). The City argues that the Building Official's discretion is not unfettered because citizens have a right to appeal his determinations to the City's board of adjustment. The City does not explain how a standardless determination by the Building Official survives a vagueness challenge merely because an appeal body can review that determination. We conclude that the absence of reasonable guidelines or standards renders the term "substantial work" unconstitutionally vague as applied to the Lindigs regardless of who is making that determination. *See Texas Antiquities Comm. v. Dallas Cnty. Cmty. Coll.*, 554 S.W.2d 924, 928 (Tex. 1977) ("A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on *ad hoc* and subjective basis, with the attended [sic] dangers of arbitrary and discriminatory applications." (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972)). Although courts recognize that myriad factual situations may arise, such that statutes can and should be worded with flexibility, the public must be provided fair notice of what is required or prohibited.

*Vista Healthcare*, 324 S.W.3d at 273. The "substantial work" standard applied in this case does not do so and is therefore constitutionally infirm.[5] We therefore sustain the Lindigs' first issue and conclude that section 06-015 is unconstitutionally vague to the extent it imposes a new-construction building-permit fee based on the Building Official's determination that residential remodeling construction "involves substantial work" and thus qualifies as new construction.

Having sustained the Lindigs' first issue, we also sustain their second, third, and fourth issues relating to the damages awarded to the City based on the trial court's erroneous enforcement of the $1,000 permit fee. With regard to those issues, it appears that there remain genuine issues of material fact regarding whether the Lindigs were issued a permit number; whether the Lindigs violated the building-permit-fee ordinance or the IRC by failing to complete the permit application and obtain a permit, failing to comply with the stop-work order that referenced the absence of a permit, and failing to comply with the IRC both with regard to the application process and the materials used in construction; and whether, when, and how the Lindigs were informed about the stop-work order. These issues are distinct from whether the Lindigs were required to pay a fee to obtain a permit.[6]

[5] The City's reliance on *Vista Healthcare, Inc. v. Texas Mutual Insurance Co.*, 324 S.W.3d 264 (Tex. App.—Austin 2010, pet. denied), is misplaced. That case is distinguishable from this case in many ways, but to the extent it affirmed the constitutionality of the guidelines applicable to reimbursement rates for medical expenditures, it also reaffirmed the settled principle that an ordinance must provide fair notice of the applicable standards. Here, there are none.

[6] Several provisions of the IRC are germane to the issues on remand. Among those provisions are section R105.1 of the IRC, which appears to require that a permit be obtained regardless of whether there is a fee for the permit. Section R105.1 provides:

Any owner or authorized agent who intends to construct, enlarge, alter, repair, move, demolish, or change the occupancy of a building or structure, or to erect, install,

13

**CONCLUSION**

We hold that the building-permit-fee ordinance (section 06-015 of the City's Code of Ordinances) is void for vagueness as construed and applied to the Lindigs because the determination of what residential remodeling projects involve "substantial work," and thus may be treated as new construction under the permitting ordinance, lacks standards that are capable of application with a reasonable degree of certainty. We therefore reverse the trial court's summary judgment in the City's

---

enlarge, alter, repair, remove, convert or replace any electrical, gas, mechanical or plumbing system, the installation of which is regulated by this code, or to cause any such work to be done, *shall first make application to the building official and obtain the required permit*.

Section R105.3 of the IRC governs applications for a permit and instructs:

To obtain a permit, the applicant shall first file an application therefor in writing on a form furnished by the department of building safety for that purpose. Such application shall:

1.  Identify and describe the work to be covered by the permit for which application is made.
2.  Describe the land on which the proposed work is to be done by legal description, street address or similar description that will readily identify and definitely locate the proposed building or work.
3.  Indicate the use and occupancy for which the proposed work is intended.
4.  Be accompanied by construction documents and other information as required in Section 106.1.
5.  State the valuation of the proposed work.
6.  Be signed by the applicant, or the applicant's authorized agent.
7.  Give such other data and information as required by the building official.

Upon application for a permit and pursuant to section R105.3.1 of the IRC, the City's Building Official is required to review a permit application within a reasonable time, inform the applicant in writing if the application or construction documents do not conform to the requirements of pertinent laws, and state the manner in which compliance is lacking. The record is not developed as to the extent to which the Lindigs and the City's Building Official complied with these provisions.

14

favor and render judgment in the Lindigs' favor on their declaratory judgment claim. Specifically, we render judgment that, as applied to the Lindigs, section 06-015 is unconstitutionally vague to the extent it imposes a new-construction-permit fee based on the Building Official's determination that residential remodeling construction "involves substantial work" and thus qualifies as new construction. However, fact issues remain as to whether the Lindigs violated the building-permit-fee ordinance by failing to complete the permit application, failing to obtain a permit, and failing to comply with the stop-work order. Accordingly, we reverse the portion of the trial court's summary judgment awarding the City civil penalties and attorneys' fees and remand this cause to the trial court for further proceedings.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Rose and Goodwin

Reversed and Rendered in part; Reversed and Remanded in part

Filed: November 14, 2012