# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-23-00459-CV

**Farm and Ranch Freedom Alliance, Appellant**

**v.**

**The Texas Department of Agriculture and Sid Miller, in His Official Capacity as Commissioner, Appellees**

### FROM THE 250TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-19-008742, THE HONORABLE MARIA CANTÚ HEXSEL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Farm and Ranch Freedom Alliance (FARFA) appeals from the trial court's final judgment dismissing with prejudice its challenge to the validity and constitutionality of rules (collectively, the Produce Safety Rules) promulgated by the Texas Department of Agriculture (the Department).[1] *See generally* 4 Tex. Admin. Code §§ 11.1–.43.[2] For the following reasons, we affirm the trial court's final judgment.

---

[1] In addition to the Department, FARFA sued Sid Miller, in his official capacity as Commissioner of the Department. We refer collectively to Miller and the Department as "the Department."

[2] Rule citations are to the rules in effect as of 2019, when the operative petition was filed; however, the rules cited herein remain unchanged since 2019. All citations to Title 4 of the Texas Administrative Code are to the rules promulgated by the Department.

BACKGROUND

FARFA, a Texas nonprofit corporation that advocates on behalf of its small-scale farmer and rancher members as well as their consumers, filed an original petition for declaratory judgment and injunctive relief challenging the constitutionality of the Produce Safety Rules and their promulgation as being procedurally improper and as exceeding the Department's statutory authority. *See* Tex. Gov't Code § 2001.038 (authorizing rule challenges).

*Historical and regulatory framework*[3]

In 1938, the Federal Food, Drug, and Cosmetic Act (FFDCA) was signed into law and established the legal framework within which the federal Food and Drug Administration (FDA) operates. In 2009, the Texas Legislature enacted Agriculture Code Section 91.009, which granted the Department authority to increase food-safety awareness among produce growers, in part because "food safety must be a top state priority because an accidental or deliberate contamination of food or crops could be detrimental to [Texas's] economy and would undermine consumer confidence in the integrity of food safety in Texas."

In 2011, Congress amended the FFDCA by enacting the Food Safety Modernization Act (FSMA), which shifted the focus from responding to foodborne illness to preventing it. *See* FDA Food Safety Modernization Act, Pub. L. No. 111–353, 124 Stat. 3885 (2011) (codified at 21 U.S.C. §§ 301–399i); https://fda.gov/food/guidance-regulation-food-and-dietary-supplements/food-safety-modernization-act-fsma (last visited Mar. 6, 2025). As part of the FSMA, Congress directed the Secretary of Health and Human Services (of which the FDA is a part) to promulgate rules to "establish science-based minimum standards for the safe

---

[3] The sentences in this summary that are not followed by citations are derived from the trial court's unchallenged findings of fact.

production and harvesting of . . . fruits and vegetables . . . [to] minimize the risk of serious adverse health consequences or death." *See* 21 U.S.C. § 350(a)(1)(A). Produce safety is a key provision of the FSMA, and in 2016 the FDA promulgated its Produce Safety Rule, comprising Part 112 of Title 21 of the Code of Federal Regulations. *See* 21 C.F.R. §§ 112.1–.213;[4] *see also* 21 U.S.C. § 350h ("Standards for produce safety"). Part 112 established, "for the first time, science-based minimum standards for the safe growing, harvesting, packing, and holding of fruits and vegetables grown for human consumption." Part 112 set forth three categories of farms: (1) not-covered, (2) qualified-exempt, and (3) covered. The FDA delegated to various states, including Texas, the enforcement of Part 112 as well as training, education, and outreach activities related to it.

In 2017, the Texas Legislature amended Agriculture Code Section 91.009 to authorize the Department to adopt rules to enforce Part 112. Section 91.009 states that the Department is "the lead agency for the administration, implementation, and enforcement of, and education and training related to . . . Part 112" and that the Department "may adopt rules to administer, implement, and enforce this section." *See* Tex. Agric. Code § 91.009(a), (d). Additionally, the Department "shall assist the fresh fruit and vegetable industries with produce safety issues" and must "inform and educate producers and packers regarding: (1) sound agricultural practices; (2) proper produce handling procedures; (3) the prevention of accidental or deliberately planned outbreaks of disease; and (4) the enhancement of overall produce safety." *See id.* § 91.009(a-1), (b).

---

[4] All citations to the Code of Federal Regulations are to rules that were in effect as of 2019, when the operative petition was filed. Although some of the rules cited herein have been amended since, such amendments have not been substantive and do not affect the issues on appeal.

Meanwhile, the FDA created the FDA–State Produce Safety Implementation Cooperative Agreement Program (Cooperation Program) wherein the FDA provides funding to states according to a series of "paths." Texas, through the Department, is a "Path C" grantee in the Cooperation Program, through which the Department's Texas Office of Produce Safety (TOPS) receives funding from the FDA to administer Part 112. The FDA set forth seven objectives that TOPS must meet pursuant to the Cooperation Program: (1) assessment and planning; (2) program administration; (3) education, outreach, and technical assistance; (4) farm inventory; (5) inspection program; (6) compliance and enforcement program; and (7) produce-related event-response planning and implementation. If TOPS fails to meet one or more of these objectives, the FDA may remove funding, and if FDA funding is removed, TOPS will cease to exist. The FDA requires TOPS to report its progress on these objectives twice a year. The reporting requirements for Path C states include an aggregate farm inventory of large covered farms, small covered farms, very small covered farms, qualified-exempt farms, and not-covered farms.

***Part 112 and the farms at issue***

This case involves two types of small farms: (1) those that are not covered by Part 112 and (2) those that would otherwise be covered but have met eligibility qualifications to be entitled to a qualified exemption from most of Part 112's requirements. Not-covered farms are those that Part 112 excepts from all its requirements for having very small annual sales of produce—$25,000 or less of produce sold, adjusted for inflation, during the previous three years. *See* 21 C.F.R. § 112.4. Mirroring an exemption in the FSMA ("Exemption for direct farm marketing"), *see* 21 U.S.C. § 350h(f)(1), qualified-exempt farms are those (1) having an average

4

annual monetary value of all food sold during the previous three years of less than $500,000, adjusted for inflation, (2) for which its average monetary value of food sold directly to "qualified end-users" exceeded the average monetary value of food sold to all other buyers. *See* 21 C.F.R. § 112.5; *see also id.* § 112.3 (defining "qualified end-user").

Qualified-exempt farms are subject to only the following subparts of Part 112: (A) ("General Provisions"), (O) ("Records"), (Q) ("Compliance and Enforcement"), and (R) ("Withdrawal of Qualified Exemption"). *See id.* § 112.6(a). Additionally, qualified-exempt farms are subject to specified "modified requirements" requiring them to "prominently and conspicuously" identify the name and complete business address of the farm where the produce was grown, either on the food-packaging label (when such label is required) or on a sign or similar item at the point of purchase (when a food-packaging label is not required). *See id.* § 112.6(b).

Notably, the FSMA specifies that the provisions applying to qualified-exempt farms do not "preempt[] State, local, county, or other non-Federal law regarding the safe production, harvesting, holding, transportation, and sale of fresh fruits and vegetables [and that compliance with the labeling or signage requirements] shall not relieve any person from liability at common law or under State statutory law." *See* 21 U.S.C. § 350h(f)(5) ("No preemption"). Additionally, the FSMA authorizes the FDA to withdraw a farm's qualified exemption in the event of "an active investigation of a foodborne illness outbreak that is directly linked to a farm subject to an exemption" or if the FDA "determines that it is necessary to protect the public health and prevent or mitigate a foodborne illness outbreak based on conduct or conditions associated with a farm that are material to the safety of the food produced or harvested at such farm." *Id.* § 350h(f)(3)(A).

5

The remaining subparts of Part 112 apply only to covered farms and prescribe practices and procedures related to the following areas, among others: personnel qualifications and training (subpart C); health and hygiene (subpart D); agricultural water (subpart E); biological soil amendments of animal origin and human waste (subpart F); domesticated and wild animals (subpart I); growing, harvesting, packing, and holding activities (subpart K); and equipment, tools, building, and sanitation (subpart L). *See* 21 C.F.R. §§ 112.11–.182. Only two sections in Part 112, comprising subpart Q, address enforcement: Section 112.192 (providing that the "failure to comply with the requirements of this part . . . is a prohibited act under section 301(vv) of the" FFDCA) and Section 112.193 (providing that the "FDA coordinates education and enforcement activities by State, territorial, tribal, and local officials by helping develop education, training, and enforcement approaches"). *See id.* §§ 112.192, .193.

### *The dispute*

FARFA alleges that during the congressional debates on the FSMA, it and other grassroots organizations across the country "advocated for protections for small-scale food producers, whose localized agricultural practices were not the target of Congress's concerns with the risks posed by the modern, global food supply system" and that these small-farm exemptions were among the protections included in the FSMA. It contends that instead of preserving these protections for small farms, the Department promulgated rules "that added additional burdens [on the small farms] inconsistent with the federal statute and regulations" when it published in the Texas Register its proposed Produce Safety Rules (proposed rules) for public comment on June 14, 2019. *See* 44 Tex. Reg. 2905, 2905–2908 (2019) (codified at 4 Tex. Admin. Code §§ 11.1–.43) (Tex. Dep't of Agric., Texas Office of Produce Safety). Rather than implementing

the FSMA and Part 112, FARFA believed that the Department's proposed rules "exceeded the scope and contravened the purpose of the express small-farm protections." Believing that the proposed rules "circumvented the shield afforded to small farms" by requiring such farms to submit to a "pre-assessment review" by TOPS to determine whether a farm is covered or eligible for the qualified-exemption, FARFA filed formal comments objecting to the proposed rules. FARFA additionally objected to the proposed rules' authorizing TOPS to "engage in warrantless entry of farmers' premises pursuant to sweeping and intrusive right-of-entry provisions for not only covered farms, but [for] not-covered farms and qualified exempt farms" and imposing penalties on a farmer's refusal to comply.

FARFA's formal comments were contained in a twelve-page letter that "clearly and logically walked through the extensive list of concrete, objective reasons why FARFA's suggested changes to the proposed rule[s] were necessary" and why the proposed rules "imposed a greater burden than the FDA regulations authorized." Further, FARFA asserted that the proposed rules "needlessly expanded government oversight of small farms in an unconstitutional manner that made small farms unfairly vulnerable" and objected to the requirement that qualified-exempt farms "register" with TOPS. On September 6, 2019, the Department published a response to the public comments, and, FARFA argues, "in little more than a single page of text" gave "particularly short shrift to FARFA's twelve-page letter." FARFA contends that this response was "inadequate." The Department adopted the proposed rules without changes, effective September 11, 2019. *See* 44 Tex. Reg. 4855, 4855–4857 (2019) (adopted Sept. 6, 2019, and codified at 4 Tex. Admin. Code §§ 11.1–.43) (Tex. Dep't of Agric., Texas Office of Produce Safety).

7

FARFA then filed this lawsuit, seeking a declaration that the challenged rules are unconstitutional and invalid and seeking a permanent injunction prohibiting their enforcement. *See generally* 4 Tex. Admin. Code §§ 11.1–.43. FARFA specifically challenged the validity and constitutionality of three categories of rules:

| Rule category: | Rule and citation: | Rule's text: |
|---|---|---|
| "egregious condition" rules | | |
| | Rule 11.1(4), *id.* § 11.1(4) (Definitions) | In addition to the definitions set forth in 21 CFR Part 112, the following words and terms, when used in this chapter, shall have the following meanings, unless the context clearly indicates otherwise. . . . (4) Egregious condition--A practice, condition, or situation on a covered farm or in a packing facility that is undertaken as part of a covered activity that directly causes, or is likely to directly cause:   (A) serious adverse health consequences or death from the consumption of or exposure to covered produce; or   (B) an imminent public health hazard. |
| | Rule 11.40(c), *id.* § 11.40(c) (Right of Entry) | Egregious Condition. TOPS may enter the premises of a covered and exempt/or Qualified Exempt farm at any time to conduct an inspection in response to an egregious condition at all locations or areas where there are activities, conditions, produce, and equipment, or at any other location where covered activities occur. |
| | The portion of Rule 11.41(a), the "penalty matrix," specifying penalties for violation of egregious-condition rules, *id.* § 11.41(a) (Enforcement and Penalties) | The following actions may be taken, and penalties may be assessed in response to findings of violations of the Produce Safety Rule. [penalty matrix reproduced below table] |

8

| | | |
|---|---|---|
| | Rule 11.42(a), *id.* § 11.42(a) (Stop Sale) | TOPS may issue a stop sale order upon a finding of an egregious condition or for repeated failure to comply with one or more corrective action plans which may result in risk to public health. |
| "verification of status" rules | | |
| | Rule 11.20(a), *id.* § 11.20(a) (Qualified Exemption) | TOPS may conduct a pre-assessment review to determine whether a farm is covered by [Part 112] and/or eligible for a Qualified Exemption. |
| | Rule 11.21(d), *id.* § 11.21(d) (Verification of Exemption) | TOPS reserves the right to schedule, at any time, an on-site visit to verify whether a farm is exempt, covered, or eligible for a Qualified Exemption. |
| | Rule 11.40(a), *id.* § 11.40(a) | Right of Entry to Determine Coverage or Verify Exceptions. TOPS may enter the premises of a farm growing produce during normal business hours to determine coverage and/or verify exceptions to [Part 112]. |
| "Right of entry" rules | Rule 11.1(6), *id.* § 11.1(6) | In addition to the definitions set forth in 21 CFR Part 112, the following words and terms, when used in this chapter, shall have the following meanings, unless the context clearly indicates otherwise.<br>. . .<br>(6) Inspection--An initial or follow up inspection conducted by TOPS for the purpose of inspecting covered produce, a covered farm, or records related to [Part 112]. |
| | Rule 11.40(b), *id.* § 11.40(b) | Right of Entry to Conduct Inspections. TOPS may enter all locations or areas of a covered farm or Qualified Exempt farm during operating hours where there are activities, conditions, produce, and equipment, or at any other location where covered activities occur, to conduct inspections. |
| | Rule 11.40(d), *id.* § 11.40(d) | Failure to Comply. Refusal to allow a TOPS inspection, or interfering with TOPS' ability to perform its duties under this section, shall result in a violation, as stated in §11.41 of this chapter, relating to Enforcement and Penalties. |

9

## TEXAS OFFICE OF PRODUCE SAFETY VIOLATION AND PENALTY MATRIX

| Violation | First Occurrence | Second Occurrence | Subsequent Occurrence(s) |
|---|---|---|---|
| Non-Compliant, Does not pose a risk to public health | Written warning; must submit corrective action plan; and follow up within 2 weeks. | $500 penalty; must submit corrective action plan; and follow up within 1 week. | $1,000 penalty; must submit corrective action; and follow up within 1 day. |
| Non-Compliant, Potential public health risk, corrected immediately during inspection. | Written warning; must submit corrective action plan; follow up within 2 weeks. | $750 penalty; must submit corrective action plan; and follow up within 1 week. | $1,500 penalty; must submit corrective action plan; and follow up within 1 day. |
| Non-Compliant, Poses risk to public health. Not corrected on site | Written warning; must submit corrective action plan; and follow up visit within 2 days. | $1,000 penalty; must submit corrective action plan; and follow up visit within 1 day. | $2,000 penalty; must submit corrective action plan; Stop Sale Order; and follow up visit within 1 day. |
| Non-Compliant, Egregious condition | Stop Sale Order; must submit corrective action plan; and follow up visit within 1 day. | Stop Sale Order; $2,500 penalty per day; must submit corrective action plan; and follow up visit within 1 day. | Stop Sale Order; $5,000 penalty per day; must submit corrective action plan; and follow up visit within 1 day. |
| Violation of Stop Sale Order | $1,500 penalty per day and follow up visit within 1 day. | $2,500 penalty per day and follow up visit within 1 day. | $5,000 penalty per day and follow up visit within 1 day. |
| Failure to allow inspection as authorized by Texas Agriculture Code §91.009. | $500 penalty per day and follow up visit within 1 day. | $1,000 penalty per day and follow up visit within 1 day. | $1,500 penalty per day; Stop Sale Order; and follow up visit within 1 day. |

The parties filed briefs on the merits. In its brief, the Department argued, among other things, that FARFA's challenges to the egregious-condition rules are not ripe. After a hearing on the merits, the trial court rendered final judgment dismissing FARFA's claims with prejudice. FARFA requested, and the trial court made, findings of fact and conclusions of law. Thereafter FARFA perfected this appeal.

## DISCUSSION

In five issues, FARFA contends that the trial court erred in dismissing its claims because (1) its challenges to the egregious-condition rules are ripe; (2) the Department violated the Texas Administrative Procedures Act (APA) in adopting the challenged rules by failing to provide a reasoned justification for them; (3) the challenged rules contravene, and impose

10

additional burdens than those prescribed by, Part 112 and the Agriculture Code; (4) the challenged rules authorize unreasonable searches in violation of the Fourth Amendment of the U.S. Constitution and Article 1, section 9 of the Texas Constitution; and (5) the challenged rules' terms "egregious condition" and "pre-assessment review" are unconstitutionally vague.

An agency rule is presumed valid and constitutional, and the challenging party bears the burden of overcoming this presumption. *Bridges v. Texas State Bd. of Veterinary Med. Exam'rs*, No. 03-18-00010-CV, 2019 WL 639151, at *2 (Tex. App.—Austin Feb. 15, 2019, no pet.) (mem. op.). FARFA's challenges to the rules' validity and constitutionality concern questions of law that we review de novo. *See Texas Mut. Ins. v. Texas Dep't of Ins.*, 214 S.W.3d 613, 622 (Tex. App.—Austin 2006, no pet.). Similarly, whether a trial court has subject-matter jurisdiction—including the question of ripeness, which is a component of subject-matter jurisdiction—is a question of law that we review de novo. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998). We review FARFA's challenge to the Department's alleged failure to provide a reasoned justification for the adoption of the challenged rules using an "arbitrary and capricious" standard. *See State v. Public Util. Comm'n*, 131 S.W.3d 314, 328 (Tex. App.—Austin 2004, pet. denied).

***Ripeness***

FARFA contends that the trial court erred in determining, in its first Conclusion of Law, that FARFA's challenges to the egregious-condition rules are not ripe. Although on appeal the Department does not contest this issue, we nonetheless address it because it implicates subject-matter jurisdiction, *see Southwest Power Co. v. Lynch*, 595 S.W.3d 678, 683 (Tex. 2020),

11

and subject-matter jurisdiction is essential to a court's authority to decide a case, *see Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993).

The ripeness doctrine arises from the prohibition against advisory opinions under the separation-of-powers doctrine. *Travelers Ins. v. Joachim*, 315 S.W.3d 860, 865 (Tex. 2010). While standing focuses on the issue of *who* may bring an action, ripeness focuses on *when* that action may be brought. *See Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851 (Tex. 2000). Our ripeness analysis considers whether, at the time a lawsuit is filed, the facts are sufficiently developed so that an injury has occurred or is likely to occur, rather than being contingent or remote. *See Patel v. Texas Dep't of Licensing & Regulat.*, 469 S.W.3d 69, 78 (Tex. 2015); *Robinson v. Parker*, 353 S.W.3d 753, 755 (Tex. 2011) (noting that ripeness requires existence of "concrete injury").

Here, none of FARFA's challenges to the egregious-condition rules require the determination of factual matters that have not yet sufficiently developed because its challenges involve purely legal questions. *See Muth v. Voe*, 691 S.W.3d 93, 124 (Tex. App.—Austin 2024, pet. filed); *see also Texas Mut. Ins.*, 214 S.W.3d at 622 (determining that when rule challenge does not require determination of any facts and involves pure question of law, plaintiff's allegation that rule interferes with or impairs specified legal right or privilege is sufficient to create ripe injury); *City of Waco v. Texas Nat. Res. Conservation Comm'n*, 83 S.W.3d 169, 176–77 (Tex. App.—Austin 2002, pet. denied) (holding that trial court had jurisdiction over City's UDJA claim concerning "purely legal issue" of whether federal law prohibited state agency from issuing new permits in watershed until agency adopted necessary pollution-reduction measures, as such legal question would not benefit from development of additional facts in connection with specific permit application).

12

While a concrete injury would certainly exist if the Department suspected that one of FARFA's members had an egregious condition on its farm, demanded right of entry to inspect for the condition, and then issued a stop-sale order upon a finding of such condition, those are not the injuries for which FARFA seeks relief. *See Muth*, 691 S.W.3d at 124. Instead, the injuries for which FARFA seeks relief are the allegedly invalid rules' interference with or impairment of the farms' constitutional right to have adequate prior notice of conditions that would trigger the Department's right to enter the farms' premises to inspect for egregious conditions. *See id.* In other words, FARFA's rule challenges involve the facial validity and constitutionality of the challenged rules, which it contends violate its constitutional rights. Our resolution of these claims and provision of relief for those injuries does not require the determination of facts in the context of any individual Department enforcement of the egregious-condition rules. *See id.*

In its trial brief, the Department argued that FARFA's challenges to the egregious-condition rules are not ripe because "these rules have never been exercised in the three years since they were adopted." Indeed, the trial court found that "to date, no rule relating to egregious conditions has been utilized or exercised by" TOPS. However, the APA expressly authorizes a litigant to bring a challenge to an agency rule and obtain a final declaration of a rule's validity *before* the rule is applied: "The validity or applicability of a rule . . . may be determined in an action for declaratory judgment if it is alleged that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff." Tex. Gov't Code § 2001.038(a); *Texas Mut. Ins.*, 214 S.W.3d at 622 ("The purpose of Section 2001.038 is to obtain a final declaration of a rule's validity before the rule is applied."). FARFA takes issue in this lawsuit not with any particular determination by the

13

Department that an egregious condition exists but with the challenged rules' allegedly unconstitutionally vague definition of the term "egregious condition" so as to fail to provide FARFA with reasonable notice of what is required to avoid the enforcement of the right-of-entry and penalty provisions.

We sustain FARFA's first issue and hold that its challenges to the egregious-condition rules are ripe. However, in light of our disposition of FARFA's remaining issues, discussed below, the trial court's legal determination to the contrary constitutes harmless error and does not require reversal of the judgment. *See* Tex. R. App. P. 44.1(a) (harmless-error rule); *G&H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011) (before reversing judgment because of legal error, reviewing court must find that such error amounted to such denial of appellant's rights as was reasonably calculated to cause and probably did cause rendition of improper judgment or that such error probably prevented appellant from properly presenting case on appeal).

***Procedural rule challenge***

In its second issue, FARFA contends that in adopting the challenged rules, the Department failed to comply with the "reasoned justification" requirement in APA Section 2001.033. *See* Tex. Gov't Code § 2001.033(a)(1); *see also National Ass'n of Indep. Insurers v. Texas Dep't of Ins.*, 925 S.W.2d 667, 669 (Tex. 1996) ("[T]he agency must explain how and why it reached the conclusions it did."). The reasoned justification must include (1) a summary of comments received from parties interested in the rule that shows the names of interested groups or associations offering comment on the rule and whether they were for or against its adoption; (2) a summary of the factual basis for the rule as adopted which demonstrates a rational

14

connection between the factual basis for the rule and the rule as adopted; and (3) the reasons why the agency disagrees with party submissions and proposals. Tex. Gov't Code § 2001.033(a)(1). There are two fundamental goals of the reasoned-justification requirement: (1) to ensure the agency fully considered the comments submitted, and (2) to provide the factual basis and rationality of the rule as determined by the agency. *Reliant Energy, Inc. v. Public Util. Comm'n*, 62 S.W.3d 833, 841 (Tex. App.—Austin 2001, no pet.).

FARFA contends that the Department's order finally adopting the Produce Safety Rules "falls short of the reasoned justification requirement" because it did not directly respond to FARFA's comments urging that the right-of-entry rules applicable to qualified-exempt farms were ambiguous and overbroad. Specifically, it argues that in the preamble to the adopted rules, the Department's "one line response" to FARFA's objection to the alleged overbreadth and ambiguity caused by the application of the right-of-entry provisions to qualified-exempt farms did not sufficiently address its comments.

FARFA's submitted comment on this issue reads,

> The proposed rule has three different provisions for "right of entry" onto farms. The first provides that the agency can enter any farm growing produce during normal business hours to determine coverage and/or verify exemptions to the Produce Safety Rule. *See* proposed 4 TAC §11.40(a). This is consistent with the provisions of FSMA.

> The proposed rule then provides that the agency may enter a covered **or qualified exempt** farm to "conduct inspections." *See* proposed 4 TAC §11.40(b). But a qualified exempt farm is only subject to inspections to confirm its exemption. These inspections are covered by 11.40(a), and should only be used to confirm that the farm is keeping the required paperwork necessary for the exemption. Qualified exempt farms are **not** subject to inspections that address the numerous substantive provisions of the Produce

Safety Rule.  **Thus, section §11.40(b) should be limited to covered farms only.**

The proposed rule then claims even broader right of entry powers for the agency based on "egregious conditions," which FARFA objects to for the reasons set out [in the] next [paragraph].

44 Tex. Reg. 4855, 4855–4856 (2019) (adopted Sept. 6, 2019 and codified at 4 Tex. Admin. Code §§ 11.1–.43).  The words "overbroad" and "ambiguous" do not appear in the text of FARFA's comment and are used only in its caption: "The 'right of entry' provisions are ambiguous and overbroad, as applied to qualified exempt farms."

The portion of the preamble in the Texas Register adopting the rules that directly addresses FARFA's above comment reads,

(4) Right of Entry.  FARFA commented that the right of entry provisions are "ambiguous and overbroad" as they apply to Qualified Exempt farms.  [The Department] has addressed this comment above, in TOFGA [Texas Organic Farmers and Gardeners Association] comment number two.

The Department's response to TOFGA's comment number two, in turn, reads,

(2) Right of Entry.  TOFGA opposed §11.40(b), stating that Qualified Exempt farms should not be subject to entry for inspections.  While the Department appreciates the comment, §11.1(6), relating to definitions, defines inspections to include the review of records, and therefore no amendment to the proposed section will be made.

In its comment, FARFA was contending that Rule 11.40(b) was (1) "overbroad" by including qualified-exempt farms in its reach because those farms need not comply with the substantive provisions of the FDA Rule and thus no additional "inspections" on such farms are

16

permissible beyond those pertaining to determining coverage, verifying exemption status, and confirming required recordkeeping; and (2) "ambiguous" by not defining what such additional "inspections" might entail. However, the Department's response (incorporating by reference its response to TOFGA's comment) referenced Rule 11.1(6)'s definition of "inspection" by way of explanation that Rule 11.40(b)'s use of "inspection" is not overbroad or ambiguous, as that definition expressly *limits* inspections of qualified-exempt farms to those conducted for the purpose of inspecting records related to Part 112. *See* 4 Tex. Admin. Code § 11.1(6). We fail to see how this response did not sufficiently respond to FARFA's comment.

A reviewing court must confine its search for a reasoned justification to the four corners of the order finally adopting the rule, and the agency must provide a reasoned justification for the rule as a whole, not clause by clause. *Reliant Energy*, 62 S.W.3d at 840. Furthermore, the order adopting the rule need only substantially comply with the reasoned-justification requirement, meaning that it must minimally demonstrate "in a relatively clear and logical fashion that the rule is a reasonable means to a legitimate objective." *See* Tex. Gov't Code § 2001.035(c); *Lambright v. Texas Parks & Wildlife Dep't*, 157 S.W.3d 499, 504–05 (Tex. App.—Austin 2005, no pet.). We have already noted that we review a challenge to the reasoned-justification requirement using an "arbitrary and capricious" standard and not presuming that facts exist to support the agency's order. *Lambright*, 157 S.W.3d at 505. In applying the standard, we examine whether the agency's explanation of the facts and policy concerns it relied on in adopting the rule demonstrate that the agency considered all relevant factors and engaged in reasoned decisionmaking. *Id.* An agency acts arbitrarily if in making a decision it (1) omits from its consideration a factor that the legislature intended the agency to consider in the

circumstances, (2) includes in its consideration an irrelevant factor, or (3) reaches a completely unreasonable result after weighing only relevant factors. *Id.*

We conclude that the Department's response to FARFA's "right of entry" comment was sufficiently thorough and responsive to constitute a reasoned justification and was not arbitrary or capricious. *See Public Util. Comm'n*, 131 S.W.3d at 332. We overrule FARFA's second issue.

### Substantive rule challenge

In its third issue, FARFA argues that the Department exceeded its rulemaking authority in promulgating the three categories of challenged rules because the rules are inconsistent with Part 112 and the Agriculture Code by imposing "additional conditions and burdens" on not-covered and qualified-exempt farms, "such as searches, inspections, and registration" beyond what is required by those authorities. *See Texas State Bd. of Exam'rs of Marriage & Fam. Therapists v. Texas Med. Ass'n*, 511 S.W.3d 28, 33–34 (Tex. 2017) (noting that courts may invalidate rule when it (1) contravenes specific statutory language; (2) runs counter to general objectives of statute; or (3) imposes additional burdens, conditions, or restrictions in excess of or inconsistent with relevant statutory provisions).

In effect, FARFA is contending that to be valid, every produce-safety measure promulgated by the Department must be expressly mentioned in Part 112 or the Agriculture Code. But such a requirement would frustrate the legislative intent to delegate authority to an agency to regulate an area in which the agency has expertise. This is because when the legislature expressly confers power on an agency, it also impliedly intends that the agency have whatever powers are reasonably necessary to fulfill its express functions or duties. *See Public*

*Util. Comm'n v. City Pub. Serv. Bd.*, 53 S.W.3d 310, 316 (Tex. 2001). The legislature intends an agency created to centralize expertise in a certain regulatory area be given a large degree of latitude in the methods it uses to accomplish its regulation function. *City of Garland v. Public Util. Comm'n*, 165 S.W.3d 814, 819 (Tex. App.—Austin 2005, pet. denied). Thus, when conferring a power upon an agency, because the legislature "impliedly intends that the agency have whatever powers are reasonably necessary to fulfill its express functions or duties," it "is not required to include in every specific detail or anticipate all unforeseen circumstances when enacting an agency's authorizing statute." *Texas Orthopaedic Ass'n v. Texas State Bd. of Podiatric Med. Exam'rs*, 254 S.W.3d 714, 719 (Tex. App.—Austin 2008, pet. denied). While it is true that an agency can adopt only such rules as are authorized by and consistent with its statutory authority, *Al Boenker Ins. Agency, Inc. v. Texas Fair Plan Assoc.*, No. 03-04-00050-CV, 2004 WL 1686598, at *4 (Tex. App.—Austin July 29, 2004, pet. denied) (mem. op.), our role in assessing a rule's validity is to "carry forward statutory directives, rather than weigh the wisdom of a particular policy," *Office of Pub. Util. Counsel v. Public Util. Comm'n*, 104 S.W.3d 225, 234 (Tex. App.—Austin 2003, no pet.).

We begin by examining the Agriculture Code provisions granting the Department rulemaking and regulatory authority. As quoted in the background section supra, Section 91.009 designates the Department as the "lead agency" for "the administration, implementation, and enforcement of, and education and training relating to" Part 112 and mandates it to "assist the fresh fruit and vegetable industries with produce safety issues." *See* Tex. Agric. Code § 91.009(a), (a-1). Also as authorized by Section 91.009, and as found by the trial court, the Department is a participant in the FDA's Cooperation Program for "the administration, implementation, or enforcement of" Part 112. *See id.* § 91.009(c-1). Lastly, the Department

exercised its legislatively delegated powers to "adopt rules" to implement, administer, and enforce Part 112, which in the performance thereof it was authorized to "consider relevant state, federal, or national standards." *See id.* § 91.009(d); *see also id.* § 91.001(a) (mandating Department to "administer this chapter [91] and adopt rules necessary for its enforcement"). Under these provisions, the Department has the statutory authority to promulgate rules administering, implementing, and enforcing Part 112 as well as in service of assisting the produce industry with "produce safety issues." This is a broad delegation of power, lacking specific details about what kind of "assistance" the Department may provide and how it may "enforce" Part 112. *Cf. Hartzell v. S.O.*, 672 S.W.3d 304, 315 (Tex. 2023) (holding that statute conferring on university system's governing board authority to promulgate rules "for the operation, control, and management of the university system and its institutions as the board may deem either necessary or desirable" was "expansive and lacking in detail," leaving it to such board to "fill in the gaps"); *Pruett v. Harris Cnty. Bail Bond Bd.*, 249 S.W.3d 447, 453 (Tex. 2008) ("When a statute expressly authorizes an agency to regulate an industry, it implies the authority to promulgate rules and regulations necessary to accomplish that purpose.").

FARFA argues that the challenged rules, and the applicable penalties for violations thereof, conflict with and create additional burdens than those imposed by Part 112 because not-covered farms expressly need not comply with any of Part 112's provisions and qualified-exempt farms need not comply with the bulk of Part 112's provisions. To summarize the rule provisions FARFA challenges, those provisions prescribe the following: (1) on-site "visits," entry onto farm "premises," and "pre-assessment review" of not-covered and qualified-exempt farms to determine and verify exemptions and not-covered status, *see* 4 Tex. Admin. Code §§ 11.20(a), .21(d), .40(c); (2) records inspections of qualified-exempt farms, with

20

penalties for the failure to allow records inspections, *see id.* §§ 11.1(6), .40(b), .40(d), .41(a); and (3) entry onto the premises of any farm and inspection thereof in response to an egregious condition and penalties therefor, including the issuance of a stop-sale order, *see id.* §§ 11.40(c), .41(a), .42(a). As the Department has pointed out, and FARFA has not proven to the contrary, Part 112 simply does not speak to the first of these matters. *See* 21 C.F.R. §§ 112.1–.213. As to the third, although Part 112 does not employ the term "egregious conditions," it does expressly allow the FDA to "withdraw" a farm's qualified exemption "in the event of an active investigation of a foodborne illness outbreak that is directly linked to" that farm or if the FDA "determine[s] that [such withdrawal] is necessary to protect the public health and prevent or mitigate a foodborne illness outbreak based on conduct or conditions associated with [that] farm." *Id.* § 112.201. This provision necessarily implies the agency's right to enter and inspect a qualified-exempt farm in the event of a foodborne illness outbreak connected with that farm.

The majority of Part 112 prescribes industry standards for covered farms conducting covered activities on covered produce, specifying which farms need not comply with those standards, and requiring specific recordkeeping for covered farms and qualified-exempt farms. *See, e.g., id.* §§ 112.4, .5, .21–.153, .161. It additionally contemplates the inspection of qualified-exempt farms in the event of serious public-health threats. *See id.* § 112.201. Finally, rather than specifying enforcement mechanisms, it recognizes that the FDA will "coordinate" with state and local officials to develop "enforcement approaches." *See id.* § 112.193. In this context, the challenged rules are more appropriately construed as authorized measures to implement and enforce Part 112 rather than as creating additional burdens on farms exempted from compliance with Part 112, contravening specific language in Part 112, or running counter to the general objectives of Part 112. Without some mechanism for verifying a farm's exempt or

21

not-covered status, the purpose of Part 112 would be frustrated, as farms not entitled to exemptions could circumvent Part 112's substantive requirements. Additionally, as the trial court found, even the FDA employs a verification-of-status procedure, as specified in its procedural memoranda entitled "FY21-22 Produce Safety Inspections," notwithstanding that Part 112 does not expressly provide for such verification procedures. Although—as the trial court found—the FDA's procedure utilizes a phone call rather than a farm visit, we determine that the Department's decision to utilize a brief farm visit reasonably falls within the umbrella of implementing, administering, and enforcing Part 112. Moreover, the trial court found that the TOPS verification-of-status procedure "consists of an on-site visit which should not last more than thirty minutes" and that the farmer is the one who "determines where" the verification occurs, which may be at the "gate of the farm."

The reasonable conclusion from Part 112's silence on right of entry, inspections, egregious conditions, and penalties is that such measures are reserved to the states in their administration, implementation, and enforcement of Part 112 and in their cooperation with the FDA. Such reservation to the states is supported by the trial court's findings that (1) the FDA reporting requirements for Path C states include the reporting of "egregious conditions" and "an aggregate farm inventory" of all types of farms, including qualified-exempt and not-covered farms; and (2) the Department's cooperative agreement with the FDA requires TOPS to meet the objective of implementing an "inspection program," among other objectives. Moreover, as the trial court found, the FFDCA—in which Part 112 appears—affords the FDA the general right to enter any establishments where food is manufactured, processed, packed, or held to conduct inspections. *See* 21 U.S.C. § 374(a)(1).

Section 91.009 confers broad powers on the Department to safeguard the health and welfare of Texas citizens as related to produce safety through the administration, implementation, and enforcement of Part 112 and by assisting the produce industries with issues related to produce safety. *See* Tex. Agric. Code § 91.009. As such, the challenged rules are in harmony with the Agriculture Code's general objectives. *See* Act of May 27, 2009, 81st Leg., R.S., ch. 184, § 1, 2009 Tex. Gen. Laws 532 (HB 1908) (declaring intent of original Section 91.009 to include that "food safety . . . be a top state priority because an accidental or deliberate contamination of food or crops could be detrimental to the state's economy and would undermine consumer confidence in the integrity of food safety in this state"). FARFA has not met its burden of demonstrating that the challenged rules exceed the Department's implied statutory authority by imposing additional burdens or conditions on small farms, run counter to the Agriculture Code's or Part 112's general objectives, or contravene specific statutory language. *See Texas State Bd. of Exam'rs of Marriage & Fam. Therapists*, 511 S.W.3d at 33–34; *Texas Ass'n of Psych. Assocs. v. Texas State Bd. of Exam'rs of Psychs.*, 439 S.W.3d 597, 604 (Tex. App.—Austin 2014, no pet.). We overrule FARFA's third issue.

### *Constitutionally "unreasonable search"*

In its fourth issue, FARFA argues that the trial court erred in dismissing its as-applied constitutional challenge to Rule 11.40's right-of-entry provisions, contending that the provisions authorize unreasonable searches in violation of the federal and Texas Constitutions. *See* U.S. Const. amend. IV (prohibiting unreasonable searches and seizures); Tex. Const. art. I, § 9 (same); *see also Schade v. Texas Workers' Comp. Comm'n*, 150 S.W.3d 542, 550 (Tex. App.—Austin 2004, pet. denied) (noting that Texas courts analyze claims under Fourth

Amendment and Article I, Section 9 identically). An "as applied" constitutional challenge asserts that a statute or rule, while generally constitutional, operates unconstitutionally as to the claimants because of their particular circumstances. *See Texas Alco. Bev. Comm'n v. Live Oak Brewing Co.*, 537 S.W.3d 647, 654 (Tex. App.—Austin 2017, pet. denied). FARFA contends that Rule 11.40 is unconstitutional as applied to its member farmers' not-covered and qualified-exempt farms because the general, "exploratory" searches permitted by the rule are constitutionally prohibited due to the fact that many of those farmers "grow produce for sale within the traditional curtilage of the home," a protected sphere. *See Oliver v. United States*, 466 U.S. 170, 178–79 (1984). In essence, FARFA contends that Rule 11.40's right-of-entry provisions confer on TOPS the right to unreasonably search not-covered and qualified-exempt farmers' curtilage. However, neither the record nor the law supports this assertion.

In subsection (a), Rule 11.40 first authorizes TOPS to "enter the premises" of not-covered and qualified-exempt farms "to determine coverage and/or verify exceptions to" the FDA Rule. *See* 4 Tex. Admin. Code § 11.40(a). As mentioned supra, the trial court found—and FARFA does not challenge such finding—that it is the farmer who determines where the TOPS on-site verification-of-status visit occurs, which may take place "at the gate of the farm," which is consistent with the Department's representation at oral argument. Regardless of this finding and the Department's representation, however, a plain reading of the text in this subsection (a) does not authorize entry onto or inspection of the curtilage of a farmer's home. Rather, it allows entry onto farm premises for only a limited, enumerated purpose: to determine coverage or verify exceptions (i.e., whether the farm is truly not-covered or eligible for a qualified exemption). Moreover, the interest of the owner of commercial property is not one in being free from *any* inspections or intrusions onto its property, but only from *unreasonable* inspections or intrusions.

24

*See Donovan v. Dewey*, 452 U.S. 594, 599 (1981). We have determined in our discussion of FARFA's third issue that the Department's enforcement authority extends to farm visits conducted for the purpose of verifying coverage and exemptions, which is not an unreasonable exercise of the Department's enforcement powers conferred by the Agriculture Code.

In subsection (b), Rule 11.40 authorizes TOPS to enter "all locations or areas" of a covered farm or a qualified-exempt farm (but *not* a not-covered farm) "where there are activities, conditions, produce, and equipment" to "conduct inspections," with "inspections" limited—as to qualified-exempt farms—to inspections of Part 112 records. *See* 4 Tex. Admin. Code §§ 11.1(6), .40(b). In subsection (c), Rule 11.40 authorizes TOPS to enter the premises of any farm, at "all locations or areas where there are activities, conditions, produce, and equipment," to "conduct an inspection in response to an egregious condition." *See id.* § 11.40(c). FARFA contends that these two provisions authorize "unrestricted access" to and an unspecified "scope of inspection" of not-covered and qualified-exempt farms, which are constitutionally prohibited as unreasonable "searches."

We first observe that FARFA's contention is belied by the challenged rules' plain text. In defining the term "inspection," Rule 11.1(6) expressly limits the term to only those inspections conducted by TOPS "for the purpose of inspecting [(1)] covered produce, [(2)] a covered farm, or [(3)] records related to [Part 112]." *See id.* § 11.1(6). Qualified-exempt farms are not considered "covered farms" and do not have "covered produce" under Rule 11.1(6)'s definition of inspection, as evidenced by Rule 11.40(b)'s separate use of the terms "covered farm" and "Qualified Exempt farm" and by Part 112's definition of covered produce, which the Department's rules incorporate by reference. *See* 21 C.F.R. § 112.1(b) ("[S]ubject to the exemptions and qualified exemptions [in this part], covered produce includes: . . . ."); 4 Tex.

25

Admin. Code §§ 11.2(a) (Covered Produce) ("Covered produce includes produce listed in 21 CFR §112.1."), .40(b) (granting TOPS right of entry onto covered and qualified-exempt farms). Therefore, TOPS may conduct inspections of qualified-exempt farms under subsection (b) *only* for the purpose of inspecting records related to Part 112. As for subsection (c), its text limits TOPS's inspections thereunder to those conducted only "in response to an egregious condition" and only of the areas of a farm "where there are activities, conditions, produce, and equipment." *See id.* § 11.40(c). This text does not authorize "unrestricted access" to a farm or an "unspecified scope of inspection" because the only reasonable construction of the text implies that only the areas of a farm where produce-related activities occur may be inspected, and only in the event of an egregious condition.

Secondly, notwithstanding the text of Rule 11.40, the constitutional protections afforded to individuals' expectation of privacy in the sanctity of their home remain, as those protections turn on whether a subject area is a home or its curtilage. As the Department points out, the well-established "Open Fields Doctrine" mandates that "an individual may not legitimately demand privacy for activities conducted out of doors in fields," as "the expectation of privacy in open fields is not an expectation that society recognizes as reasonable." *See Oliver*, 466 U.S. at 178–79 (internal quotation marks omitted).

> Open fields do not provide the setting for those intimate activities that the [Fourth] Amendment is intended to shelter from government interference or surveillance. There is no societal interest in protecting the privacy of those activities, such as the cultivation of crops, that occur in open fields. Moreover, as a practical matter these lands usually are accessible to the public and the police in ways that a home, an office, or commercial structure would not be.

*Id.* at 179; *see Carroll v. State*, 911 S.W.2d 210, 217 (Tex. App.—Austin 1995, no pet.) (noting that Texas Constitution applies Open Fields Doctrine). Additionally, a person cannot create a legitimate expectation of privacy in an open field or expand the "curtilage" of his home to include an open field by erecting fences, gates, and "No Trespassing" signs around it. *Rosalez v. State*, 875 S.W.2d 705, 714 (Tex. App.—Dallas 1993, pet. ref'd). Nonetheless, an individual retains an expectation of privacy in a home's curtilage. *Oliver*, 466 U.S. at 180. When determining whether an area is an open field or curtilage, the Supreme Court has stated, "the central component of this inquiry [is] whether the area harbors the intimate activity associated with the 'sanctity of a man's home and the privacies of life.'" *United States v. Dunn*, 480 U.S. 294, 300 (1987) (some internal quotation marks omitted) (quoting *Oliver*, 466 U.S. at 180).

Having determined in our discussion of FARFA's third issue that the Department and TOPS have the right to enter produce farms for specified purposes as a function of their enforcement powers, we next consider whether the text of Rule 11.40 contravenes the federal or state constitutions by expressly authorizing entry onto and inspection of farmers' curtilage. We first observe, again, that we presume the challenged rule is constitutional, and the burden is on FARFA to overcome that presumption. *See Texas State Bd. of Exam'rs of Marriage & Fam. Therapists*, 511 S.W.3d at 33. Secondly, FARFA has not identified any evidence in the record supporting its assertion that some of its members' not-covered or qualified-exempt farms are in fact growing or keeping produce in the curtilage of homes or that the Department has attempted to enter and inspect such farmers' curtilage. Thirdly, FARFA has cited no caselaw in which a farm growing produce for profit was held to be curtilage, and we have found none. Fourthly, a plain reading of the rules—even as applied to farmers who may live on not-covered and qualified-exempt farms—simply does not permit entry onto and inspection of farmers' curtilage.

27

The challenged rules authorize a visit—which can be at the farm gate—to verify exemptions, and they authorize inspections, in the event of an egregious condition, of areas of the farm where produce-related activities occur. In the event those produce-related activities happen to occur in or on a farmer's home's curtilage—a factual scenario not supported by the record—and the Department or TOPS were to actually intrude upon the curtilage without a farmer's permission, that farmer would have an adequate remedy at law as in any other Fourth Amendment case: a challenge to any evidence obtained as the fruits of an improper search, in the criminal context, *see, e.g.*, *Kann v. State*, 694 S.W.2d 156, 159 (Tex. App.—Dallas 1985, pet. ref'd), and a remedy for an unconstitutional search under 42 U.S.C. § 1983 in the civil context, *see* 42 U.S.C. § 1983 ("Civil action for deprivation of rights"). We hold that the trial court did not err in determining that the challenged rules do not violate the U.S. and Texas Constitutions' protections against unreasonable searches as applied to FARFA or its members, and we overrule FARFA's fourth issue.

### Unconstitutional "vagueness"

In its final issue, FARFA contends that the terms "egregious condition" in Rule 11.1 and "pre-assessment review" in Rule 11.20 are unconstitutionally vague and thus void. *See Lloyd A. Fry Roofing Co. v. State*, 541 S.W.2d 639, 642 (Tex. App.—Dallas 1976, writ ref'd n.r.e.) (noting that Fourteenth Amendment to U.S. Constitution prohibits laws that are so impermissibly vague that ordinary person would not understand what conduct is prohibited); *see also* U.S. Const. amend. XIV.

The standard to challenge a rule for vagueness is well-established:

Rules are presumed valid and the burden of demonstrating their

28

invalidity is on the challenging party. We will find a rule unconstitutionally vague only if it (1) does not give fair notice of what conduct may be punished, and (2) invites arbitrary and discriminatory enforcement by its lack of guidance for those charged with its enforcement. When persons of common intelligence are compelled to guess at a law's meaning and applicability, due process is violated and the law is invalid. A law is not unconstitutionally vague merely because it does not define words or phrases. And, the existence of a dispute as to a law's meaning does not necessarily render the law unconstitutionally vague. When applying the fair notice test, courts allow statutes imposing economic regulation greater leeway than they allow penal statutes. Courts recognize the myriad of factual situations that may arise and allow statutes to be worded with flexibility, provided the public has fair notice of what is required or prohibited. In the case of civil or regulatory statutes, no more than a reasonable degree of certainty is required.

*Vista Healthcare, Inc. v. Texas Mut. Ins.*, 324 S.W.3d 264, 273 (Tex. App.—Austin 2010, pet. denied) (internal citations omitted). "To survive a vagueness challenge, a statute need not spell out with perfect precision what conduct it forbids." *Comm'n for Law. Discipline v. Benton*, 980 S.W.2d 425, 437 (Tex. 1998).

Rule 11.1 defines "egregious condition" as

A practice, condition, or situation on a covered farm or in a packing facility that is undertaken as part of a covered activity that directly causes, or is likely to directly cause:

(A) serious adverse health consequences or death from the consumption of or exposure to covered produce; or

(B) an imminent public health hazard.

4 Tex. Admin. Code § 11.1(4). The trial court made several unchallenged findings of fact related to this term:

- The term egregious condition is currently utilized by the FDA and the National Association of State Departments of Agriculture ("NASDA").

- The FDA reporting requirements for Path C states include reporting of egregious conditions.

- The term egregious condition is currently utilized by the produce safety enforcement arms of at least seven other Path C states.

- At least seven other Path C states prescribe similar penalties upon a finding of an egregious condition.

- The FDA can apply similar penalties upon a finding of an egregious condition.

- At least six other Path C states have rules affording right of entry to conduct inspections and address egregious conditions.

These findings support a conclusion that the term "egregious condition" is not unconstitutionally vague. Moreover, the Department points to evidence in the record contained in the FDA's FY21-22 Produce Safety Inspections Memorandum including a "working definition" of the term, agreed upon within the NASDA/FDA workgroup, that is substantially similar to the above definition. That workgroup appended to its definition numerous non-exhaustive "examples" of situations and factors that might constitute an egregious condition.[5] Given this evidence, the trial court's findings, and the definition itself—specifying that egregious conditions are those that directly cause or are likely to directly cause serious adverse consequence or death or an

---

[5] Some of those examples include a "dump tank with dead rats floating," "visibly filthy harvesting bins or trailer beds that cannot be adequately cleaned in direct contact with covered produce," and a "farmer applying raw manure in direct contact with edible portions of the plant."

imminent public health hazard—we cannot conclude that the term is unconstitutionally vague. *See Vista Healthcare*, 324 S.W.3d at 273.

Rule 11.20 defines the term "pre-assessment review" as a "review to determine whether a farm is covered by the Produce Safety Rule and/or eligible for a Qualified Exemption." 4 Tex. Admin. Code § 11.20. This text explicitly limits a pre-assessment review to verification of status—that is, it limits the "review" to assessing whether a farm is covered or eligible for a qualified exemption and nothing more. That verification of status turns on the farm's prior three-year produce sales, adjusted for inflation, and—for qualified-exempt farms—on whether such sales to qualified end-users exceeded all other sales. FARFA argues that this "vague" term of "pre-assessment review" "would lead to Department officers having different interpretations of the scope of their authority when conducting the pre-assessment review," such as one officer believing "she is only allowed to conduct the review to determine coverage when at a farm, but another [reading] the rule more liberally [and believing] he has the authority to inspect for a violation." We disagree. The term does not authorize a farm "inspection" or create ambiguity about whether under Rule 11.20 an inspection of the farm or its produce would be allowed, nor does it invite arbitrary and discriminatory enforcement by a lack of guidance for those charged with enforcement. Applying the applicable standard, we hold that the term "pre-assessment review" provides the requisite reasonable degree of certainty allowing it to be understood by a person of reasonable intelligence. *See Vista Healthcare*, 324 S.W.3d at 273.

Because neither challenged term is unconstitutionally vague, we overrule FARFA's fifth issue.

31

**CONCLUSION**

Having overruled FARFA's issues, we affirm the trial court's final judgment.

_____

Karin Crump, Justice

Before Justices Triana, Theofanis, and Crump

Affirmed

Filed:   April 3, 2025